**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 1923, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 86–1297.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1987.

Decided May 19, 1987.

---

Joseph F. Henderson, with whom Mark D. Roth, Washington, D.C., was on the brief, for petitioner.

Arthur A. Horowitz, Atty., Federal Labor Relations Authority, for respondent. Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., William E. Persina, Associate Sol. and Pamela P. Johnson, Atty., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before WALD, Chief Judge, MIKVA and DOUGLAS GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In this case, we consider whether a proposal submitted by a union during negotiations for a new contract falls outside the scope of an agency-employer's duty to bargain. The proposal at issue would have prohibited an agency supervisor from recommending the discharge of an employee for unacceptable performance unless the supervisor found that the employee would

be incapable of performing any other position in the agency. The agency—the Department of Health and Human Services (HHS)—refused to bargain over the proposal, claiming that it impermissibly infringed on managerial prerogatives. The Federal Labor Relations Authority (FLRA) approved the employer's refusal to bargain, and we enforce the FLRA's order.

## I. BACKGROUND

■ Section 7106 of the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–35 (1980), provides the statutory framework within which the dispute in this case has occurred. Subsection 7106(a)(2)(A) of the Act sets forth certain managerial rights: it provides that

[s]ubject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency ... to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees[.]

Taken alone, this section would relieve an employer from any duty to bargain over union proposals whose incorporation in a collective bargaining agreement would affect the enumerated managerial rights. Subsection 7106(b) of the Act, however, lists certain kinds of proposals that would affect these managerial rights, yet remain proper subjects of collective bargaining. In pertinent part, § 7106(b) states:

Nothing in this section shall preclude any agency and any labor organization from negotiating ... procedures which management officials of the agency will observe in exercising any authority under this section; or ... appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

This subsection makes clear that a proposal advancing either a procedure or an appropriate arrangement for adversely affected employees falls within the scope of an agency's duty to bargain, notwithstanding that implementation of the proposal would affect the enumerated managerial rights. That there is some tension between these two subsections is obvious; nonetheless, both congressional dictates can be and have been applied harmoniously.

■ This court previously has established tests for determining whether a union proposal concerns either a procedure or an appropriate arrangement for adversely affected employees within the meaning of § 7106(b). To decide whether a proposal concerns a "procedure," the decisionmaker must ask whether "implementation would 'directly interfere with the agency's basic right[s]' " listed in § 7016(a). *Department of Defense v. FLRA*, 659 F.2d 1140, 1159 (D.C.Cir.1981) (quoting *AFGE v. Air Force Logistics Command*, 2 FLRA 604, 613 (1980)), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). If implementation of the proposal would not interfere directly with managerial prerogatives, it is procedural and therefore negotiable. To determine whether a proposal advances an appropriate arrangement for adversely affected employees, the decisionmaker applies a different test. Assuming that the proposal, as a threshold matter, suggests an arrangement for adversely affected employees, the decisionmaker must ask whether implementation of the proposed arrangement would "impinge upon management prerogatives to an excessive degree." *AFGE v. FLRA*, 702 F.2d 1183, 1188 (D.C.Cir.1983). If implementation of the proposed arrangement would not interfere excessively with managerial prerogatives, it is appropriate and therefore negotiable.

■ Although the distinction between these two tests may not be immediately apparent, it is nonetheless real. Excessive interference is something more than direct interference: implementation of a proposal may interfere directly with managerial prerogatives, yet the interference may not be excessive. *See AFGE v. FLRA*, 702 F.2d at 1187–88. The determination whether an interference with managerial prerogatives is excessive depends primarily on the extent to which the interference hampers the ability of an agency to perform its core

functions—to get its work done in an efficient and effective way. Thus, if implementation of a proposal will directly interfere with substantive managerial rights, but will not significantly hamper the ability of an agency to get its job done, the proposal is not negotiable as a procedure, but is negotiable (assuming the threshold test described above is met) as an appropriate arrangement.

The case at bar, which turns on these questions of negotiability, arose when Local 1923 of the American Federation of Government Employees (AFGE) submitted a proposal (entitled "Proposal 6") to HHS in the course of negotiations for a collective bargaining agreement. Proposal 6 dealt with the treatment of employees who are incapable of performing their jobs in an acceptable manner. The proposal stated:

> Should remedial action fail and the employee's performance continue to be unacceptable after a reasonable opportunity to demonstrate improvement, the employee may be liable for adverse action under 5 U.S.C. 43. The appropriate personnel action will depend on the following considerations:
>
> 1. when the employee is capable of performing another position of the same grade, the supervisor should propose to reassign the employee to such a position;
>
> 2. when the employee is not capable of performing a position at the same grade but is capable of performing a position at a lesser grade, the supervisor should propose a demotion to a position at the next lower grade;
>
> 3. a proposal of separation should only be proposed when the employee is determined to be incapable of the performance of any other position reasonably available.

HHS refused to discuss this proposal, claiming that it fell outside the scope of the agency's duty to bargain. The AFGE responded by filing a negotiability appeal with the FLRA; the union requested the FLRA to issue a declaration that the proposal was negotiable and an order directing HHS to bargain on the proposal.

The FLRA dismissed the union's appeal, holding that the agency had no duty to engage in negotiations concerning Proposal 6. *See AFGE, Local 1923 and Department of Health and Human Services*, 21 FLRA 178 (1986). In reaching this conclusion, the FLRA relied primarily on its prior decision in *National Labor Relations Board Union and National Labor Relations Board, Office of the General Counsel (NLRB)*, 18 FLRA 320 (1985). In that case, the FLRA had declared non-negotiable a union proposal that would have "require[d] in every instance ... that the agency reassign before demoting and demote before terminating an employee" who was performing his job in an unacceptable manner. *Id.* at 324. The FLRA had explained that the proposal suggested neither a procedure nor an appropriate arrangement because implementation of the proposal would have interfered both directly and excessively with managerial prerogatives. In the case at bar, the FLRA analogized Proposal 6 to the proposal at issue in *NLRB*. Proposal 6, the FLRA claimed, "would require the Agency in virtually all instances to reassign an employee prior to terminating or demoting that employee for unacceptable performance." *AFGE, Local 1923*, 21 FLRA at 187. The FLRA then concluded that "for the reasons set forth in the *NLRB* case, ... Proposal 6 is contrary to the Agency's right under section 7106(a)(2)(A) of the statute to remove employees or reduce them in grade or pay for unacceptable performance.... [and] constitutes neither a negotiable procedure under section 7106(b)(2) nor an appropriate arrangement under section 7106(b)(3)." *Id.*

## II. Discussion

To decide whether the FLRA correctly held that Proposal 6 was non-negotiable, we must address two issues. The first question is whether, under the "direct interference" test, Proposal 6 suggests a procedure for management to use in exercising its rights to fire and demote employees for unacceptable performance. We conclude that the implementation of Proposal 6 would interfere directly with the exercise of these managerial rights and therefore

that the proposal does not suggest a procedure. The next inquiry is whether, under the "excessive interference" test, Proposal 6 advances an appropriate arrangement for adversely affected employees. We conclude that the implementation of Proposal 6 would interfere excessively with the exercise of managerial rights and therefore that the proposal does not advance an appropriate arrangement. Because we reach these conclusions, which form the basis of the FLRA's decision, we enforce the order of the FLRA. In discussing the relevant questions, however, we depart in substantial measure from the FLRA's analysis.

In our view, the FLRA failed to analyze as accurately as it might have the union proposal at issue in this proceeding. Most of the FLRA's analysis consisted of analogizing—indeed, virtually equating—Proposal 6 to the union proposal involved in the *NLRB* case. Convenient as that comparison might be, the two proposals differ in significant ways. The union proposal at issue in *NLRB*, in the FLRA's own words, would have required that "the agency reassign before demoting and demote before terminating an employee" for unacceptable performance. *NLRB*, 18 FLRA at 324. The proposal thus would have prevented the agency from initially firing, or even demoting, an employee who was performing his work in an unacceptable fashion. The proposal in the case at bar would have less sweeping effect. Under Proposal 6, a supervisor could propose the discharge of an employee upon determining that the employee would not perform capably at any other position, and the agency could then act upon this recommendation. In other words, whereas the proposal in *NLRB* would have removed the right to discharge an employee in the first instance in all cases, the proposal in this case would remove that right only when the supervisor deemed the employee capable of performing other positions. We think this difference of sufficient import to render the FLRA's equation of the two proposals faulty. Rather than relying so heavily on *NLRB*, the FLRA should have evaluated thoroughly the actual terms of Proposal 6.

█ In describing Proposal 6, we already have gone some way toward answering the question whether the proposal suggests a negotiable procedure. A court cannot find that a proposal suggests a procedure unless implementation of the proposal would not directly interfere with managerial rights. Under § 7106(a)(2)(A), management has the right to fire employees for unacceptable performance. Proposal 6, if incorporated in a collective bargaining agreement, would prohibit the agency from discharging, or even proposing to discharge, an employee who could perform capably at another position; the proposal would thereby prevent the agency from exercising its managerial right of discharge in a number of cases. Implementation of the proposal thus would interfere directly with managerial prerogatives. And because implementation of the proposal would have this effect, the proposal cannot be said to concern a negotiable procedure under § 7106(b).

█ The question whether Proposal 6 suggests an appropriate arrangement under § 7106(b) is more difficult. All of the parties agree, and we therefore assume, that the proposal suggests an arrangement for adversely affected employees; the only question is whether the proposed arrangement is appropriate within the meaning of § 7106(b). As we have noted, this question requires us to apply the excessive interference test, which in turn demands that we examine the extent to which implementation of the proposed arrangement would hamper the ability of the agency to perform its work in an efficient and effective manner. The practical effect of Proposal 6, if incorporated in a collective bargaining agreement, would be twofold. The most obvious consequence of the proposal would be to force the agency to reassign an employee who could perform capably at another available position to that other job. This effect, in and of itself, would not hamper the ability of the agency to perform its work in an effective manner; the employees reassigned under Proposal 6 would, by definition, be capable of performing their new jobs. But the proposal also would have another effect, which *would* damage

in significant measure the agency's ability to function effectively. As currently written, Proposal 6 would force the agency to maintain the employee in his current position—*i.e.*, the position in which he has been performing unacceptably—for a potentially lengthy period of time. As an initial matter, Proposal 6 would require the agency to make a specific finding about an employee's capacity to do other work before removing the employee from his current job. In addition, all parties agree that the employee could challenge this finding in a grievance proceeding while remaining in his current position. The proposed arrangement therefore would force the agency to suffer the unacceptable work of an unable employee during the potentially time-consuming process of making and defending a factual finding about the employee's capacity to do other work. This practical consequence of the proposed arrangement renders it an excessive interference with managerial rights, which we cannot deem appropriate.

For the foregoing reasons, we deny the union's petition for review and enforce the order of the FLRA.

*It is so ordered.*