Constance HORNER, Director, Office of Personnel Management, Petitioner,

v.

Henry BELL and American Federation of Government Employees, Local 1923, Respondents.

Appeal No. 86–1698.

United States Court of Appeals, Federal Circuit.

July 16, 1987.

Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for petitioner. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director.

Charles H. Hobbie, Deputy General Counsel, American Federation of Government Employees, AFL-CIO, Washington, D.C., argued for respondents. With him on the brief was Mark D. Roth, General Counsel.

Before FRIEDMAN, RICH and DAVIS, Circuit Judges.

FRIEDMAN, Circuit Judge.

Upon determining that the respondent Bell's performance had been unacceptable, the employing agency demoted him from grade GS-10 to grade GS-5. On review of that decision, an arbitrator upheld the determination of unacceptable performance but reversed the demotion and directed the agency to reassign Bell to the first available position at grade GS-10 for which he was qualified. The arbitrator took this action because he concluded that the agency's demotion violated a provision in the collective bargaining agreement between the agency and the union that represented Bell.

Pursuant to 5 U.S.C. §§ 7121(f) and 7703(d) (1982), the Director of the Office of Personnel Management filed a petition for review of that decision. The Director asserted that the decision will have a significant impact upon Civil Service law. *See Devine v. Brisco*, 733 F.2d 867, 871 (Fed. Cir.1984). We granted the Director's petition, and we now reverse the arbitrator's decision.

## I

A. The arbitrator's findings of fact are set out in his initial decision, *American Fed'n of Gov't Employees, Local 1923 (AFL-CIO) v. Social Sec. Admin., Dep't of Health and Human Servs.*, No. 85K/02477 (July 18, 1985) (Initial Arbitration Decision), and are not in dispute. Briefly, the facts are as follows:

Bell was employed in July 1978 as a grade GS-5 claims authorizer in the Social Security Administration (agency)'s Office of Disability Operations. He received a number of promotions, and in 1981 he was promoted to a grade GS-10 claims authorizer. While working in that office, Bell's performance was always rated as fully satisfactory or better.

In July of 1982, Bell voluntarily transferred from the Office of Disability Operations to another division in the agency, the Division of Appeals Processing, in order to increase his chances for further promotions. After reassignment to the new position, however, Bell's performance deteriorated and generally was rated as unsatisfactory. In February of 1983, the agency placed Bell on a performance improvement plan to enable him to improve his work. When Bell's performance had not improved by February of 1984, he was reassigned to another position in the division "in the hopes that by giving him a fresh start in a new environment, his performance would improve." *Id.* at 5. Bell's performance did not improve, however, and in September of 1984 he was demoted to the position of grade GS-5 check claims inquiry clerk.

B. The union sought arbitration of Bell's demotion, pursuant to the collective bargaining agreement between the agency and the union. *See* 5 U.S.C. § 7121(e). After a hearing, the arbitrator set aside the demotion and directed the agency to assign Bell to a higher grade position.

The arbitrator held that "the Agency has clearly proved that [the] grievant's performance ... was unacceptable." *Initial Arbitration Decision*, slip op. at 11. The arbitrator ruled, however, that unless no vacancies or special staffing needs existed, the collective bargaining agreement required that if an employee whose performance was deficient was capable of performing in another position in the same grade or at the next lower grade, the agency was required to assign the employee to that position. *Id.* at 15-16.

The arbitrator held that the agency had not shown any legitimate staffing reasons to justify the five-grade demotion. *Id.* at 16. The arbitrator ruled that since Bell was capable of performing adequately in certain positions at the grade GS–10 level, as shown by his satisfactory work at that grade in his prior assignment, the agency improperly had demoted Bell from his grade GS–10 position to a grade GS–5 position.

The arbitrator noted that Bell's performance had always been rated satisfactory when he worked as a grade GS–10 claims authorizer in the agency's Office of Disability Operations, and that Bell's performance problems had begun only after his transfer to the Division of Appeals Processing. According to the arbitrator, the reason for the difference in Bell's performance in the two divisions was that in the Division of Appeals Processing Bell worked on a number of cases that involved decisions of administrative law judges, which generally were more complex than those he had previously handled in the Office of Disability Operations. *Id.* at 13–15.

The arbitrator concluded that Bell was capable of working as a grade GS–10 claims authorizer provided that he was not required to handle cases that involved appeals from decisions of administrative law judges. The arbitrator ordered that

> [the] grievant shall be given a right to the first available vacancy as a Claims Authorizer in an [Office of Disability Operations] division which does not process [administrative law judge] cases at a grade of GS–10 or below, and if that grade is less than a GS–10, than [sic] he shall have the further right to the first available vacancy at a higher grade until he reaches a GS–10.

*Id.* at 17–18.

C. Pursuant to 5 U.S.C. §§ 7703(d), 7121(f), the Director of the Office of Personnel Management petitioned the arbitrator to reconsider his decision. Relying upon this court's decision in *Lisiecki v. Merit Sys. Protection Bd.*, 769 F.2d 1558 (Fed.Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986), the Director contended that the arbitrator lacked the "power to determine whether [the] grievant [was] qualified for any position other than that which management assign[ed] him to, because [an] arbitrator cannot mitigate penalties imposed for incompetence." *See American Fed'n of Gov't Employees, Local 1923 (AFL–CIO) v. Social Sec. Admin., Dep't of Health and Human Servs.*, No. 85K/02477, slip op. at 2 (May 2, 1986) (Reconsideration Decision). The Director further asserted that if the collective bargaining agreement were interpreted to require an agency to reassign a deficiently performing employee to particular positions within the agency, the agreement would violate 5 U.S.C. § 7106(a), which reserves to management the right to assign and reduce in grade its employees.

On reconsideration, the arbitrator ruled that his original interpretation of the collective bargaining agreement had been correct, that his decision did not conflict with *Lisiecki*, and that even if the agreement, as he had interpreted it, violated 5 U.S.C. § 7106(a), he had "most serious doubts" about whether he (as distinguished from a court) could declare a provision in a collective bargaining agreement illegal.

II

A. *The Collective Bargaining Agreement.* In pertinent part, section 8(C) of the collective bargaining agreement provides:

> Should remedial action fail and the employee's performance continue to be unacceptable after a reasonable opportunity to demonstrate improvement, the employee may be liable for adverse action under 5 U.S.C. Sec. 43. The appropriate personnel action will depend on the following considerations:
> 1. When the employee is capable of performing another position of the same grade, the supervisor may propose to reassign the employee to such a position;
> 2. When the employee is not capable of performing a position at the same grade but is capable of performing a position at a lesser grade, the supervisor may pro-

pose a demotion to a position at the next lower grade.

Collective Bargaining Agreement Between the Department of Health and Human Services, Social Security Administration and the American Federation of Government Employees, AFL–CIO, Local 1923, article 21, section 8(C) (June 11, 1982).

The arbitrator interpreted this provision as requiring the agency to reassign an employee whose performance was deficient to another position at the same or the next lower grade level in which the employee could perform satisfactorily. Under the arbitrator's analysis, the agency could avoid this obligation only if it demonstrated that there was a "lack of vacancies or other special staffing needs" that would justify the agency's failure to make such a reassignment. *Reconsideration Decision,* slip op. at 4. An essential element of the arbitrator's ruling was the arbitrator's own determination that Bell could perform satisfactorily as a GS–10 claims authorizer as long as he was not required to work on cases decided by an administrative law judge.

▮ We conclude, however, that the arbitrator's decision was based on an erroneous interpretation of the collective bargaining agreement and a misinterpretation of the history of the negotiations that led to the agreement.

1. Section 8(C) provides that if an employee "is capable of performing another position of the same grade," the supervisor "may" propose to reassign him to such a position, and that if the employee is capable of performing only at the next lower grade, the supervisor "may" propose a demotion to that grade. This language is permissive, not mandatory. Moreover, the supervisor merely proposes certain action. It is the agency that takes the action, and the agency may reject the supervisor's proposal. Finally, the provisions relating to what the supervisor "may" propose are preceded by the statement that these are merely "considerations" that will determine the "appropriate personnel action."

Section 8(C) cannot fairly be read as requiring the agency to reassign to the same or next lower grade an employee whose performance remains unacceptable after a reasonable opportunity to demonstrate improvement. The provision merely states the "considerations" the agency is to take into account in deciding what action to take with respect to such an employee. It makes clear that if the employee can perform at the same or the next lower grade, the supervisor should consider such a reassignment or demotion rather than removal, which latter action the agency may take for unacceptable performance. 5 U.S.C. § 4303(a).

Moreover, the structure and operative language of the provision indicate that it is the supervisor who is to determine whether the employee is "capable of performing another position of the same grade" or of "the next lower grade." Kenneth Walsh, the director of the Division of Appeals Processing and Bell's fourth-level supervisor, testified that all claims authorizer positions in the division involve basically the same "skills and abilities," and that Bell had been demoted to grade GS–5 because Bell's poor performance demonstrated that he was incapable of handling a higher position. See the further discussion of this issue in part II(B)(1), *infra.* The arbitrator was not justified in substituting his judgment for that of the agency regarding the grade level position and work that Bell could perform.

The arbitrator found, however, that since Bell had performed satisfactorily as a claims authorizer in his prior assignment in the Office of Disability Operations, he would be able to perform that work as long as he did not handle cases involving decisions of administrative law judges. Unfortunately, the performance of government employees sometimes deteriorates. The fact that Bell may have worked satisfactorily as a claims authorizer in a prior assignment did not justify rejection of the agency's determination that 19 months later he was no longer capable of performing that work.

Indeed, the agency believed that Bell's performance had begun to deteriorate prior to his transfer to the Division of Appeals

Processing. The arbitrator discounted this evidence on the ground that since Bell received satisfactory ratings during that period, the decline of his performance was not "significant" since "[a]n employee whose performance declines from 'outstanding' or 'excellent' to 'fully satisfactory' is still entitled to retain his grade." *Initial Arbitration Decision,* slip op. at 2. That evidence was "significant," however, as indicating the beginning of the decline of Bell's performance, which became worse after his transfer.

2. The history of the negotiation of section 8(C) of the bargaining agreement confirms that it does not impose upon the agency the mandatory requirement that the arbitrator construed it to contain. The arbitrator stated that initially "the Union submitted a proposal stating that when the deficient employee was capable of performing a position of the same grade or a lesser grade, 'the supervisor shall propose' a transfer or demotion, respectively." *Id.* at 8. The agency rejected this proposal because it left "management no discretion" in making reassignments. *Id.* The union then submitted a proposal that "changed the word 'shall' to 'should.'" Again, the agency rejected the proposal. *Id.*

The parties then called upon an arbitrator to assist in formulating a provision. The arbitrator suggested substituting the word "may" for the word "shall." *Id.* at 9. The purpose of this change, according to the arbitrator, was to accommodate the agency's wish "to reserve 'discretion on a case-by-case basis to decide what [the agency was] actually going to do with [an employee whose performance was unsatisfactory.]'" *Id.* (citing testimony of negotiator Paul M. Arca). The agency accepted the word "may" because it did not want "to be bound in all events to reassign or demote only one grade an employee found unacceptable in [his] existing job." *Id.*

In the negotiations, the agency rejected provisions that could be interpreted as requiring it to reassign an employee whose performance was unsatisfactory to another position at the same or next lower grade level, and accepted only a provision that gave it broad discretion to decide what action to take with respect to such an employee. The arbitrator's construction of the agreement improperly incorporated into it the very limitation that the agency refused to accept during the negotiation of the agreement.

B. *Section 7106(a).* Our conclusion that section 8(C) merely permits, but does not require, the agency to reassign an inadequately performing employee to the same or next lower grade level is confirmed by the fact that if that provision were, as the arbitrator concluded, mandatory, it would be inconsistent with and thus violate the labor-management relations provisions of Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1198 (Reform Act). If possible, a contractual provision should be construed so as to avoid its being illegal. *Walsh v. Schlecht,* 429 U.S. 401, 408, 97 S.Ct. 679, 685, 50 L.Ed.2d 641 (1977); *see also Great N. Ry. Co. v. Delmar Co.,* 283 U.S. 686, 691, 51 S.Ct. 579, 581, 75 L.Ed. 1349 (1931) ("[W]here two constructions of a written contract are possible, preference will be given to that which does not result in violation of law.").

The Reform Act requires that management officials of federal agencies bargain in good faith with employee representatives over conditions of employment. 5 U.S.C. § 7114(a)(4). The duty to bargain, however, is not absolute, since section 7106 of the Reform Act excludes from negotiation certain subjects that remain within the control of management. 5 U.S.C. § 7106(a). That section provides:

§ 7106. **Management Rights**

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or

pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

....

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

....

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

This provision gives management the exclusive authority to "assign, direct ... remove, reduce in grade or pay, or take other disciplinary action against [its] employees...." 5 U.S.C. § 7106(a)(2)(A). Unions and management, however, may negotiate the "procedures" by which management exercises that authority and "appropriate arrangements for employees adversely affected by the exercise" of that management authority. 5 U.S.C. §§ 7106(b)(2), 7106(b)(3).

As interpreted by the arbitrator, section 8(C) of the collective bargaining agreement directly limits management's authority to "assign" and to "reduce in grade or pay" its employees. The respondents contend, however, that section 8(C) does not violate section 7106(a) because the limitation that provision imposes upon the agency's authority to demote an employee either is a "procedure" governing management's exercise of its substantive rights, or provides "appropriate arrangements" for an employee who is adversely affected by management's determination that the employee's performance is unacceptable.

1. *Procedures.* We reject the contention that, as interpreted by the arbitrator, section 8(C) merely provides "procedures" for management to follow. Although the demarcation between substance and procedure sometimes is difficult to define, *Department of Defense, Army-Air Force Exch. Serv. v. Federal Labor Relations Auth.*, 659 F.2d 1140, 1150–52 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), *see also Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965), section 8(C), as it was interpreted, imposed substantive rather than procedural requirements upon management.

The arbitrator found that in demoting Bell, the agency followed proper procedures because it gave him remedial counseling and an adequate period to improve his work. *Initial Arbitration Decision* at 4–5. The arbitrator's review, however, was not confined to examining whether the agency had followed the proper procedures for demoting a poorly performing employee. Instead, the arbitrator undertook to review and reverse the agency's substantive determinations that Bell was incapable of performing as a claims authorizer, and that the only available job he was capable of performing was that of a grade GS–5 check claims inquiry clerk.

The agency made a significant effort to reassign Bell to the highest level position in which the agency concluded he was capable of performing. *See id.* at 6. Kenneth Walsh, the director of the Division of Appeals Processing, testified that he looked throughout his division as well as throughout the Office of Disability Operations to find a suitable position for Bell. Walsh determined, however, that (1) since Bell's performance as a claims authorizer in the Division of Appeals Processing had been unsatisfactory, and (2) since a claims authorizer in the Office of Disability Operations used "identical manuals and procedures" and required "the same knowledge and training skills," as a claims authorizer in the Division of Appeals Processing, Bell was incapable of satisfactory performance as a claims authorizer in either office. *Id.* at 6–7.

The arbitrator rejected the agency's determination that Bell was incapable of performing as a claims authorizer, on the ground that Bell's "supervisors ... [had

made] an erroneous decision that [Bell was] incapable of doing the work...." *Id.* at 16. The arbitrator thus improperly substituted his judgment for that of the agency on the substantive question whether Bell could perform particular work. *See Mare Island Naval Shipyard v. International Fed'n of Professional and Technical Eng'rs, Local 11*, 23 F.L.R.A. 262 (1986) (an "arbitrator may not conduct an independent evaluation of an employee's performance ... and may not substitute his or her own judgment for that of management as to what an employee's evaluation ... should be"). An agency's determination of the kind and level of work an employee can perform and the job to which he should be assigned involves substance, not procedure.

The Federal Labor Relations Authority (Authority), which adjudicates collective bargaining disputes in the federal sector, *see Columbia Power Trades Council v. United States Dep't of Energy*, 671 F.2d 325, 329 (9th Cir.1982), repeatedly has held that provisions in collective bargaining agreements that directly interfere with the right of management to reassign, demote, or remove a poorly performing employee cannot be justified as involving "procedures" under section 7106(b)(2), but instead constitute an impermissible interference with management's rights under section 7106(a), and therefore are not mandatory subjects of collective bargaining.

In a leading case dealing with this issue, *American Fed'n of Gov't Employees, Local 1708 v. Military Ocean Terminal, Sunny Point, Southport, N.C.*, 15 F.L.R.A. 3 (1984), the Authority considered a union proposal that was similar to the arbitrator's interpretation of section 8(C) in the present case. In that case, the Authority found non-negotiable a provision which required, among other things, that the agency reassign an employee whose performance was deficient to another position at the same grade level before taking more severe disciplinary action against that employee. The Authority stated:

> The proposal on its face would prescribe specific actions to be taken against an employee if the Agency determines that action is warranted based on unacceptable performance.... The actions involved entail the exercise of various rights reserved to management pursuant to section 7106(a) of the Statute. In this connection, ... [p]roposals which would require that employees be reassigned from their current positions conflict with management's right under section 7106(a)(2) to assign employees.

*See also American Fed'n of Gov't Employees, AFL–CIO, Local 2786 v. Defense Mapping Agency*, 20 F.L.R.A. 193 (1985) (proposal that required an agency to "attempt where possible" to take progressive disciplinary steps (*i.e.*, reassignment, demotion, removal) against an employee whose performance was unacceptable did not involve a "procedure" under section 7106(b)(2)); *Department of the Treasury, Internal Revenue Serv. v. National Treasury Employees Union*, 16 F.L.R.A. 749, 750–51 (1984) (provision that would have required that the agency provide training and reassign and demote an employee before removing him for unacceptable performance was non-negotiable); *American Fed'n of Gov't Employees, AFL–CIO, Local 1940 v. Department of Agric.*, 16 F.L.R.A. 816, 825–26 (1984) (same); *accord Department of Defense*, 659 F.2d at 1150, 1163 (upholding Authority's determination that union proposal that required an agency to reassign qualified employees to positions of their preference during reduction in force "unless there [were] persuasive mission related reasons for not doing so" impermissibly interfered with management's right to direct and assign employees). Likewise, the United States Court of Appeals for the District of Columbia Circuit recently upheld the Authority's determination that a provision was non-negotiable which "prohibited an agency supervisor from recommending the discharge of an employee for unacceptable performance unless the supervisor found that the employee would be incapable of performing any other position in the agency." *See American Fed'n of Gov't Employees, AFL–CIO, Local 1923 v. Federal Labor Relations Auth.*, 819 F.2d 306, 307–08 (D.C.Cir.1987).

■ Like the provisions involved in the foregoing cases, the provision involved in the present case, as interpreted by the arbitrator, was not "procedural" since it impinges upon and interferes with management's right under section 7106(a)(2) to "assign, direct ... remove, reduce in grade or pay, or take other disciplinary action against [its] employees...." The respondents' attempt to bring section 8(C) within the coverage of section 7106(b)(2) "can, at best, be described" as an attempt to "cloak[ ] in procedural garb [a provision] which encroach[es] upon management's substantive authority." *American Fed'n of Gov't Employees, Local 1968 v. Federal Labor Relations Auth.*, 691 F.2d 565, 572 (D.C.Cir.1982).

The respondents contend, however, that section 8(C) does not infringe on management's right under section 7106(a)(2) to assign its employees because the arbitrator ruled that the agency was not required to reassign an employee to the same or next lower grade level if the agency could demonstrate that there was "a lack of vacancies or other legitimate staffing reasons" for the agency's refusal to make the reassignment.

This limitation upon the agency's obligation to reassign employees does not vitiate the obligation the arbitrator imposed on the agency to reassign an employee to a position at the same or next lower grade level that the agency has determined the employee is not qualified to fill. The arbitrator's decision still constitutes an impermissible intrusion into management prerogatives. *Defense Mapping Agency*, 24 F.L.R.A. 154 (provision non-negotiable where agency required to make reassignments "where possible"); *see also Department of Defense*, 659 F.2d at 1163 (provision non-negotiable where agency required to make reassignment of poorly performing employees "unless there [were] persuasive mission related reasons for not doing so."). The Authority has "consistently held that proposals requiring an agency to make an effort to accomplish an objective which is outside the duty to bargain are themselves non-negotiable." *AFGE, Local 2185 v.*

*Tooele Army Depot*, 23 F.L.R.A. 193 (1986).

The respondents also argue that this court cannot declare that section 8(C), as interpreted by the arbitrator, violates section 7106(a), because it is the Authority and not a court that determines the negotiability of particular provisions in collective bargaining agreement in the federal sector. *See National Treasury Employees Union v. Federal Labor Relations Auth.*, 691 F.2d 553, 563 (D.C.Cir.1982) ("Congress anticipated that issues arising under the [Reform] Act requiring expert judgment of federal labor-management relationships would be resolved by the Authority as the agency entrusted with the responsibility for policy in that area."). This court, however, cannot uphold an arbitrator's award that conflicts with 5 U.S.C. § 7106 or any other applicable statute. *See Devine*, 733 F.2d at 872; *see also American Fed'n of Gov't Employees, AFL–CIO, Local 1858 v. United States Army Missile Command, Redstone Arsenal*, 4 F.L.R.A. 361 (1980) (negotiability of collective bargaining proposals may be raised in grievance proceedings).

Moreover, we have not held that section 8(C) was non-negotiable. We hold only that that provision (1) does not impose mandatory requirements upon the agency, and (2) that if it did, it would be invalid as impinging upon management prerogatives under section 7106(a).

2. *Appropriate Arrangements.* We also reject the respondents' contention that section 8(C), as interpreted by the arbitrator, merely provides "appropriate arrangements" for an employee adversely affected by the exercise of management's substantive authority. In determining whether a particular provision constitutes an "appropriate arrangement," the critical inquiry is whether the provision interferes with management prerogatives "to an excessive degree." *American Fed'n of Gov't Employees, AFL–CIO, Local 2782 v. Federal Labor Relations Auth.*, 702 F.2d 1183, 1188 (D.C.Cir.1983). In turn, the latter inquiry involves "weighing the benefits to employees of the proposed arrangement

against the effect on management rights." *American Fed'n of Gov't Employees, Local 1760 v. Department of Health and Human Servs., Social Sec. Admin.,* 25 F.L.R.A. 16, 19 (1986).

■ We conclude that, as interpreted by the arbitrator, section 8(C) interferes with management prerogatives to an excessive degree. The Reform Act was intended to preserve "for management certain decisions seen as essential to the effective and efficient operation of the service." *United States Dep't of Justice, Immigration and Naturalization Serv. v. Federal Labor Relations Auth.,* 709 F.2d 724, 727 (D.C.Cir. 1983). Among management's most fundamental prerogatives is the right to determine employee qualifications and to assign employees to positions for which management determines they are qualified. *See, e.g., Congressional Research Employees Assoc. v. Library of Congress, Congressional Research Serv.,* 25 F.L.R.A. 306 (1986).

On the other hand, when an employee is demoted for unacceptable performance, the employee's interests "are ... not entitled to great weight" because the adverse action is "due to employee 'fault', *i.e.,* performance deficiency ..." *American Fed'n of Gov't Employees,* 25 F.L.R.A. at 19. Thus, when the reassignment rights of a poorly performing employee are balanced against the right of the agency to direct and control its workforce, the interests of the employee are outweighed by those of the agency.

Accordingly, section 8(C), which (as interpreted by the arbitrator) directly restricts management's right to reassign or demote a poorly performing employee as it deems appropriate, interferes with management prerogatives to an excessive degree, and therefore cannot be viewed as merely involving "appropriate arrangements" under section 7106(b)(3). *See National Labor Relations Bd. Union v. National Labor Relations Bd.,* 18 F.L.R.A. 320 (1985) (provision requiring that agency "refrain from demoting or terminating an employee for unacceptable performance until it first assigned that employee to work in a different

... position which [was] available and for which the employee [was] qualified and reasonably expected to perform acceptably" was not an "appropriate arrangement"); *American Fed'n of Gov't Employees,* 25 F.L.R.A. at 19 (provision which required agency to provide training to poorly performing employee before demoting him was not an "appropriate arrangement"); *International Plate Printers, Die Stampers and Engravers Union v. Department of the Treasury,* 25 F.L.R.A. 113 (1986) (provision which required agency to select the minimum disciplinary action "to achieve a proper disciplinary objective" was not an "appropriate arrangement").

C. *Lisiecki.* In *Lisiecki,* 769 F.2d at 1568, we held that in reviewing an agency decision under chapter 43 of the Reform Act disciplining an employee for unacceptable performance, the Merit Systems Protection Board (Board) has no power to modify the agency's penalty. Since an arbitrator must apply the same standards as the Board, *Cornelius v. Nutt,* 472 U.S. 648, 660–61, 105 S.Ct. 2882, 2889–90, 86 L.Ed.2d 515 (1985), it follows that an arbitrator similarly cannot modify an agency penalty imposed in a chapter 43 proceeding.

The respondents contend, however, that *Lisiecki* does not apply here, since the arbitrator did not modify the agency penalty because he found the penalty inappropriate. Instead, according to the respondents, the basis of the arbitrator's decision was the correction of what he believed to be the agency's misinterpretation and misapplication of the collective bargaining agreement.

Since we have held that the arbitrator's interpretation of section 8(C) of the collective bargaining agreement was erroneous, it follows that his decision cannot be supported as an attempt to correct the agency's misapplication of that agreement. In fact, the arbitrator obviously modified the agency penalty by changing it from a five-grade demotion to a transfer to the first available position at the same grade. Since the collective bargaining agreement does not support or justify the arbitrator's action, it follows that that action was an

impermissible modification of the agency's penalty. *Lisiecki, supra.*

## CONCLUSION

The decision of the arbitrator rejecting the agency's demotion of respondent Bell to a grade GS–5 check claim inquiry clerk and ordering the agency to reassign him to the first available grade GS–10 claims authorizer position is reversed.

REVERSED.