**PATENT OFFICE PROFESSIONAL ASSOCIATION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 93–1676.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 5, 1994.

Decided Feb. 28, 1995.

Joseph V. Kaplan, Silver Spring, MD, argued the cause and filed the briefs, for petitioner.

William E. Persina, Atty., Federal Labor Relations Authority, Washington, DC, argued the cause, for respondent. With him on the brief were, David M. Smith, Solicitor, Arthur A. Horowitz, Associate Solicitor, and James F. Blandford, Atty., Federal Labor Relations Authority, Washington, DC. Pamela Penny Johnson, Washington, DC, entered an appearance, for respondent.

Before BUCKLEY, GINSBURG, and SENTELLE,. Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Patent Office Professional Association (a union) petitions for review of an order of the Federal Labor Relations Authority declaring non-negotiable certain bargaining proposals that it submitted to the Patent and Trademark Office.· Because the Authority properly determined that the Union's proposals were neither negotiable "procedures" nor "appropriate arrangements" under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7105–7135, we deny the petition.

## I. Background

The proposals at issue in this case concern patent classifiers, who are technically trained professional employees with two broad areas of responsibility. First, patent classifiers create and revise the Patent Classification System (PCS), whereby patents are categorized according to the technology they describe. Second, patent classifiers oversee the actual classification of patents within the PCS.

In the latter capacity, a patent classifier initially assigns a patent, based upon its description, to the patent examiner responsible for the classification in which it appears to belong. If the examiner thinks the patent belongs in a different classification, then he or she refers it to the patent examiner responsible for that classification. If the two examiners disagree about the correct classification, then the classification issue goes back to the patent classifier with whom it started. If both the examiners are in that classifier's grouping or "post," then he or she simply decides the matter; otherwise that patent classifier must consult with the classifier for

the other post involved. The latter classifier can send the patent on to a third classifier (etc.), creating the potential for three or more classifiers having to reach agreement upon the proper classification of a particular patent.

The PTO uses a number of objective criteria for evaluating a patent classifier's job performance. For example, a classifier's success in revising and expanding the PCS is measured in part by the amount of staff time used on the project. Performance in actual classification is assessed in part upon the basis of errors made—assignments that later prove incorrect—measured both on an absolute scale and as a percentage of the classifier's submissions. Classification work is also evaluated based upon the amount of time the classifier spends per classification error corrected and per classification dispute resolved.

Some of these criteria look only at the accuracy of the classifier's own work, while others also reflect his or her success in "supervis[ing] and check[ing] the work of others" and "consult[ing and] cooperat[ing] with examiners and other classifiers." Thus, the classifier who makes the initial assignment of a patent is held accountable (in the evaluation process) for the total amount of staff time spent classifying that patent—including time spent resolving any disputes arising out of that assignment—even though other classifiers and examiners over whom the classifier has no authority may become involved in the matter before the patent is finally classified.

In 1990, when the PTO notified the Union that it planned to revise its performance appraisal plan for patent classifiers, *see* 5 U.S.C. § 4302 (requiring performance appraisal systems), the Union submitted its own proposals. When the PTO refused to negotiate over several of the proposals, the Union petitioned the Authority for review pursuant to 5 U.S.C. § 7105(a)(2)(E) (directing the Authority to "resolve issues relating to the duty to bargain in good faith"). The Authority determined that some of the proposals were negotiable, but that three were not. *Patent Office Professional Association and U.S. Department of Commerce Patent and Trademark Office*, 48 F.L.R.A. 129

(1993) (*POPA II*); *cf. id.* at 166 (Member Armendariz dissenting re Proposals 2 and 7). The Union now seeks review of the Authority's adverse rulings.

We will overturn the Authority's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) ("the Authority is entitled to considerable deference when it exercises its special function of applying the general provisions of the [Statute] to the complexities of federal labor relations"). More particularly, we approach our task mindful that the "Congress has specifically entrusted the Authority with the responsibility to define the proper subjects for collective bargaining, drawing upon its expertise and understanding of the special needs of public sector labor relations." *Library of Congress v. FLRA*, 699 F.2d 1280, 1289 (D.C.Cir.1983).

## II. Analysis

In general, employees covered by the Federal Service Labor–Management Relations Statute have the right "to engage in collective bargaining with respect to conditions of employment." 5 U.S.C. § 7102(2). Section 7106, however, excludes various "management rights" from the realm of negotiation. That ambidextrous provision, on the one hand, makes non-negotiable any proposal that would "affect the authority of any management official" to direct and to assign work to employees, 5 U.S.C. § 7106(a)(1)–(2), including the right to set substantive standards, *see National Treasury Employees Union v. FLRA*, 691 F.2d 553 (D.C.Cir.1982); on the other hand, it protects the employees' right to negotiate over the "procedures which management officials of the agency will observe in exercising any authority under this section," 5 U.S.C. § 7106(b)(2), and over "appropriate arrangements for employees adversely affected by the exercise of [such] authority." 5 U.S.C. § 7106(b)(3); *see Dept. of Veterans Affairs v. FLRA*, 33 F.3d 1391, 1394 (D.C.Cir.1994) (distinguishing between "management's nonnegotiable substantive authority" and "properly negotiable proce-

dural matters"); *National Ass'n of Government Employees, Local R14–87 and Kansas Army National Guard,* 21 F.L.R.A. 24 (1986) (hereinafter *KANG*) (setting out balancing test whereby FLRA weighs practical effects of proposal and approves proposals that do not "excessively" limit management rights).

In this case, the Union does not dispute that the proposals at issue implicate management rights under § 7106(a). Therefore each proposal must be either a "procedure" under § 7106(b)(2) or an "appropriate arrangement" under § 7106(b)(3) to be negotiable under the Statute.

### A. Proposal No. 1

It shall be unreasonable to adversely evaluate a patent classifier for failure to meet a particular performance standard if meeting the performance standard is dependent upon the action of another employee over whom the classifier has no control.

The Union contends that this proposal would simply confine evaluation procedures to events under the classifier's control and thereby insure that no classifier is held responsible for the performance of another employee. The Union claims it is negotiable either as a procedure or as an appropriate arrangement.

■ The Authority, however, determined that the proposal was not a mere procedure because it "would limit management's ability to hold classifiers accountable for their performance in situations where the performance of a particular job requirement involves the coordination of the work of other employees." *POPA II* at 135. (Recall that a patent can pass through a number of hands before it is finally classified, but the time of all concerned is "charged," for evaluation purposes, to the original classifier.) The Authority concluded that the proposal, and particularly the phrase "no control" at the end of the proposal, could be read to insulate a patent classifier from evaluation insofar as the performance of his or her work depended in part upon the efforts of any other employee. The effect of the proposal would then be significantly to alter the scope of the work for which a patent classifier is held responsible, not simply the procedure by which the PTO monitors his or her performance.

■ The Authority's conclusion is far from arbitrary or capricious. For the Authority must pass upon the proposal in its full breadth, without engrafting upon it any limiting construction. *See Department of Defense, Army–Air Force Exchange Service v. FLRA,* 659 F.2d 1140, 1146 n. 32 (1981) ("The Authority may not approve a proposal not presently consistent with law by invoking the theory that the proposal will subsequently be rendered legally acceptable ... by the parties"). So read, the Union's proposal can reasonably be understood to prevent the PTO from holding a patent classifier accountable for his or her ability to facilitate and expedite the work of other patent classifiers and of patent examiners over whom the classifier has no supervisory authority. *See National Fed'n of Fed. Employees and U.S. Dep't of Veterans Affairs,* 46 F.L.R.A. 1170 (1993) (finding proposal requiring allowance to be made for "factors beyond the employee's control" "would require the Agency to change or adjust its performance expectations in light of the specific factors and, thereby, constitutes a substantive limitation on the Agency's ability to determine the content of the standards"), *review denied, Department of Veterans Affairs v. FLRA,* 33 F.3d 1391, 1394 (D.C.Cir.1994). The Authority was therefore justified in concluding that under the reservation of management rights in § 7106(a)(2), the PTO may not be required to bargain over Proposal No. 1.

The Union also argues, however, that the present decision is inconsistent with the Authority's earlier decision in *Patent Office Professional Ass'n and Patent and Trademark Office,* 25 F.L.R.A. 384 (1987) (*POPA I*). That case involved patent examiners rather than classifiers. The Authority held negotiable a proposal that would have declared it "unreasonable to adversely evaluate an examiner for failure to meet a particular timeliness standard ... [when] completion is dependent upon the action of another employee over whom the examiner has no control." There is an important distinction between the two cases, however. A patent examiner has no control over, and is less

affected by, the work of other employees; he or she is simply not required to coordinate the work of others. A patent classifier, in contrast, is expected to resolve disputes between examiners and to work out classification disputes with other classifiers whose work he or she does not supervise; indeed that is an important part of the job. Therefore, the present proposal, unlike the proposal in *POPA I*, could effectively prevent the PTO from evaluating how well some of its employees perform one of their major responsibilities.

■ In the alternative, the Union argues that Proposal No. 1 is negotiable as an "appropriate arrangement" under the balancing test of the *KANG* decision, i.e., that it would be of substantial benefit to employees while imposing only a minimal burden upon management. The Authority, on the other hand, maintains that the proposal could place a substantial burden upon the exercise of management's authority: The PTO must be able to evaluate a patent classifier upon the basis of how quickly and accurately he or she classifies patents and resolves classification disputes; and such an evaluation necessarily reflects in part the ability of the patent classifier to expedite the work of others.

■ The Authority seems reasonably to have concluded that any benefit that would accrue to patent classifiers from the implementation of the proposal would be outweighed by the proposal's effect upon the ability of the PTO to hold classifiers accountable for their work. Because the Union presents us with no reason to think that conclusion arbitrary or capricious, we must uphold it. *See Library of Congress*, 699 F.2d at 1289 (Authority better suited than court to balance practical effect of proposal in workplace).

B. Proposal No. 2

Any classification practice or procedure which is set forth in [one of three listed PCS manuals] shall not be considered an error unless the employee was given timely written notice of a change in the practice or procedure.

■ The Union contends that its Proposal No. 2 would help a patent classifier to know what is to be done in any given situation. According to the Union, it would not require that all procedures be specified in writing, but it would insulate a classifier from adverse evaluation insofar as he or she followed a written procedure.

The Authority, however, agreed with the PTO that this proposal would limit in two ways management's ability to direct employees. First, it would make it difficult for the PTO to supplement a practice or procedure as soon as a novel problem arises, i.e., without taking the time necessary to revise a written manual. Second, it would prevent the PTO from holding a classifier accountable in a situation calling for the exercise of professional judgment, i.e., where the manuals are incomplete or contradictory or where application of a rule in a particular situation to which it nominally applies would be inappropriate. *See POPA II*, 48 F.L.R.A. at 141.

■ A proposal that would require an agency merely to provide its employees with documentation relating to the exercise of a management right, and would not place a substantive limitation upon the exercise of that right, is generally negotiable. *See National Treasury Employees Union and U.S. Department of Health and Human Services, Social Security Administration, Office of Hearings and Appeals*, 47 F.L.R.A. 705 (1993). The Authority reasonably concluded, however, that Proposal No. 2 runs afoul of this general rule by foreclosing upon management's ability to evaluate and to take corrective action against a classifier for his or her handling of a situation covered in a manual, even where some other authority—a written or an oral directive, a conflicting provision in another manual, or even common sense—dictates otherwise. *POPA II*, 48 F.L.R.A. at 141. The proposal would effectively require that the PTO's manuals cover each situation a patent classifier may face, regardless whether the situation was reasonably foreseeable. This would intrude substantially upon management's ability to direct employees and to assign them work requiring the exercise of judgment. Indeed, the result could be similar to what British

labor unions achieve by "working to rule," namely the tangle that inevitably occurs when a bureaucracy is bound and gagged with red tape—no matter that the tape is of its own making.

The Union raises two other arguments in support of Proposal No. 2. Having failed to raise them before the agency, however, it cannot prevail with them here. *See* 5 U.S.C. § 7123(c) ("No objection that has not been urged before the Authority . . . shall be considered by the court").

■ Nor does the Union give us cause to upset the Authority's conclusion that Proposal No. 2 is not an "appropriate arrangement." Granted, an employee would be better off under a scheme that offers a safe harbor if he or she sails strictly by the book. The only question is whether the Authority was unreasonable in concluding that the proposal fails the balancing test of *KANG* because "it does not permit consideration of the extent to which a reasonably competent professional should recognize that a different choice of practice or procedure is called for." *POPA II*, 48 F.L.R.A. at 146. We think it eminently reasonable to suppose that binding management to the black letter of its manuals in every situation would excessively interfere with its ability to set performance standards for employees to meet and procedures for employees to follow.

### C. Proposal No. 7

Management shall identify . . . the circumstances under which it will consider that a [Patent] Classifier has committed an error in the assignment of an application even though (1) an examiner has, or would have, accepted the application for examination purposes from the [ ] Classifier, or (2) the [ ] Classifier relied on an informal understanding between patent examiners which was contrary to written definitions or classification rules. If [these circumstances are not identified], then classifiers shall be entitled to assume that the two identified situations are not errors for evaluation purposes.

■ The Union claims this proposal was designed to "elicit specific direction" in controversial classifications by allowing the classifier safely to assume that his or her classification was proper if either the examiner to whom he or she referred the assignment accepted it or the classifier was relying upon an "informal understanding" between examiners as to the proper classification. Therefore, says the Union, the proposal would require only that the PTO give classifiers notice of any change from established classification procedures.

According to the Authority, however, the proposal is not so sharply drawn; it would, in essence, require the PTO "to anticipate at the time it prepares the performance plan all possible circumstances in which a classifier's assignment of an application would be erroneous." *POPA II*, 48 F.L.R.A. at 164. Thus, like Proposal No. 2, Proposal No. 7 would effectively prohibit the agency from holding a classifier accountable for his or her performance in any situation that the PTO had not anticipated and addressed in writing.

There is apparently significant room for disagreement over the proper classification of many a patent; as with all but the few entirely mechanical aspects of life, the exercise of judgment is required. The Authority concluded that to take away the PTO's right to treat adversely a classifier who fails to exercise good judgment, so as to minimize error and expense, in what are by definition the most difficult cases, would invade the territory protected by § 7106(a) under the heading of management rights. For the same reason, the Authority also concluded that Proposal No. 7 is not negotiable as an "appropriate arrangement." The Union has asserted the contrary, but does not thereby establish that either conclusion involves an impermissible construction of the terms of the statute or an arbitrary or capricious exercise of the Authority's expertise.

### III. Conclusion

The FLRA reasonably determined that the three proposals at issue in this case are not negotiable, either as procedures or as appropriate arrangements within the meaning of 5

U.S.C. § 7106. The petition for review is therefore

*Denied.*