STANSBURY v. UNITED STATES.

1. The act of August 23d, 1842, declaring that no officer of the government drawing a fixed salary, shall receive additional compensation for any service, unless it is authorized by law, and a specific appropriation made to pay it, is not repealed by the twelfth section of the Act of August 26, the same year.

2. An agreement by the Secretary of the Interior to pay a clerk in his department for services rendered to the government by labors abroad—the clerk still holding his place and drawing his pay as clerk in the Interior—was, accordingly, held void.

APPEAL from the Court of Claims, the case being thus:

A statute of the United States, passed August 23, 1842,* enacts as follows:

" No officer, in any branch of the public service, or any other person, whose salary, pay, or emoluments, is, or are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or any other service or duty whatever, *unless the same shall be authorized by law,* and in the *appropriation therefor explicitly set forth,* that it is for such additional pay, extra allowance, or compensation."

A subsequent statute,† one of the 26th August, in the same year, enacts by its twelfth section, as follows:

" That no allowance or compensation shall be made to any clerk or other officer, by reason of the discharge of duties which belong *to any other clerk* in the same or any other department; and no allowance or compensation shall be made for any *extra* services whatever, which any clerk or other officer may be required to perform."

With these two enactments in force, Stansbury, *being at the time a clerk in the Department of the Interior,* was appointed in 1851, by the Secretary of the Interior, at that time Mr. Stuart, an agent to proceed to Europe and prepare for the department an account of the London Industrial Exhibition. In this employment, he was engaged in London, and subsequently at Washington, in the preparation of his report, for a term of seventeen months; but during all the time of this service, held his place and drew his pay as a clerk in the Interior Department. The secretary promised, in writing, to pay his expenses and allow him a reasonable compensation for his services. The actual expenses of the agency were

---

* § 2; 5 Stat. at Large, 510.        † Ib. 525.

paid, but on his return, the Secretary of the Interior, now Mr. McLelland, declined to pay him anything more. He accordingly brought suit to recover from the United States the value of his services. The Court of Claims decided that the claim was within and barred by the act of August 23d, 1842, and was not removed therefrom by the act of the following 26th, and ordered judgment to be entered for the United States.

*Mr. Caverly, for the appellant:*

If the act of 23d August had, at its passage, any reference to clerks in the departments, it has been repealed so far as it related to them by the subsequent enactments of the 26th August. It is repealed, because these latter enactments prescribe a rule involving the same subject-matter; and make, in fact, an independent rule for clerks or other officers in the departments; refusing pay to them for doing the duties of *other* clerks or officers, and refusing pay to them for *extra* services of any kind. While the latter act declares that a clerk shall have no pay for services done in the place of another, and no *extra* allowance whatever, it also, in its legitimate effect, declares that a clerk may have pay on a special contract in a distinct service, foreign to clerkships and *extra* allowances. These statutes were never intended to prevent the holding of two distinct offices at the same time the one entirely foreign to the other.[*] The statute of August 23d, 1842, is in derogation of private rights, and is, especially as against an equitable, meritorious claim, to be construed strictly.[†]

Mr. Stansbury having been commissioned to perform a distinct agency in a foreign country, such agency is to be regarded as inconsistent with a clerkship here. His clerkship for the time was *in fact* suspended during his nine months absence. If his family, during that period, have received his pay as clerk, there may have been a mistake in law of the department. But that does not preclude Mr. Stansbury

---

[*] Converse *v.* United States, 21 Howard, 470.

[†] Smith *v.* Spooner, 3 Pickering, 230.

from asking remuneration for the services which he did perform.

It is a fair presumption of law, that the Secretary of the Interior, in creating an agency to perform the service in question acted legally. It would not become the government to appoint Mr. Stuart to be Secretary of the Interior, and hold him forth to the world as worthy of public trust, and then to turn around and repudiate his contracts, and deprive innocent individuals of reasonable pay for services performed for the government, in violation of a contract officially made by him.

If, however, that government officer mistook his powers in sending Mr. Stansbury abroad, it was a mistake of the government. Her officer may have been ignorant of the law, but the government cannot now, by any principle of law, go behind her own act to avoid payment of the just obligation which her act induced.

*Mr. Talbot, for the Attorney-General, contra:*

Mr. Justice DAVIS delivered the opinion of the court.

The appellant insists that the written promise of the Secretary to pay him the value of his services, is a binding obligation on the government. But this is not so, for no authority of law existed for the promise. The secretary could not pay the claim, because there was no appropriation to pay it, and he was not authorized by Congress to create an agency to perform the service in question. He undoubtedly acted in good faith with Stansbury, and supposed that Congress would approve the mode he adopted for obtaining useful information, and ratify his proceedings; and his promise, under the circumstances, must be considered as a dependent one, to take effect, if Congress appropriated money to enable him to comply with it. Congress having failed to make the appropriation, the secretary was justified in refusing to pay the claim.

But he was justified in his refusal on another ground. The payment of the claim was forbidden by positive law.

The second section of the act of August 23d 1842, declares

that no officer of the government, drawing a fixed salary, shall receive additional compensation for any service, unless it is authorized by law and a specific appropriation made to pay it. When Stansbury was appointed in 1851, this law was in force, and afforded notice to all *employees* of the government, of the policy of Congress on the subject to which it relates. The law was passed to remedy an evil which had existed, of detailing officers with fixed pay to perform duties outside of their regular employment, and paying them for it, when the government was entitled, without this double pay, to all their services. The law prohibited, and was intended to do so, the allowance of such claims as these, made by public officers, for extra compensation, on the ground of extra services.

But the appellant insists, if the above act embraced clerks in the departments, its operation has been withdrawn from them by the twelfth section of the act of 26th of August, 1842. It is difficult to see how this conclusion is reached, because this section refuses to pay clerks or other officers in the departments for doing the duties of other clerks or officers, and refuses, further, to pay them for extra services of any kind.

There is no inconsistency between the provisions of the two acts, which were passed within a few days of each other, and were parts of a system, intended for the guidance of those in the employ of the government. These provisions furnished notice to all in authority, that in no event could clerks in the departments be paid for doing the work of their fellow-clerks, nor could they be paid for any other service, unless it was authorized by law, and followed by an appropriation to pay for it.

Stansbury's appointment was not authorized by law, nor was there any appropriation to pay for the services which he expected to render the department.

It follows, therefore, that the transaction between Secretary Stuart and himself was in violation of the statute, and cannot be the foundation of an action.

JUDGMENT AFFIRMED.