**ASSOCIATION OF CIVILIAN TECHNICIANS, Puerto Rico Army Chapter, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 00–1486.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 2001.

Decided Nov. 9, 2001.

Daniel M. Schember argued the cause and filed the briefs for petitioner.

David M. Smith, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were William R. Tobey, Deputy Solicitor, and Judith A. Hagley, Attorney.

Before: SENTELLE, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The Association of Civilian Technicians, Puerto Rico Army Chapter ("the Union"), petitions this Court for review of the Federal Labor Relations Authority's ("FLRA" or "Authority") decision in which the FLRA determined that a collective bargaining agreement provision that seeks reimbursement for out-of-pocket losses resulting from agency cancellation of previously approved leave is contrary to law and therefore nonnegotiable. Petitioner argues that the FLRA erroneously applied the Travel Expenses Act, 5 U.S.C. § 5701, *et seq.*, to resolve the dispute and failed to consider whether the provision was authorized under the collective bargaining law, 5 U.S.C. § 7101, *et seq.* (Federal Services Labor–Management Relations Statute). Because we agree with the petitioner that the Travel Expenses Act does not prohibit the proposed provision, we grant the petition for review, vacate the decision and order of the FLRA, and remand for proceedings consistent with this opinion.

## I. Proceedings Below

The Association of Civilian Technicians, a federal employee labor organization, filed a negotiability appeal with the FLRA pursuant to 5 U.S.C. § 7105(a)(2)(E), concerning provisions of a collective bargaining agreement that had been disapproved by the head of the agency (the Department of Defense) as contrary to law under 5 U.S.C. § 7114(c). Specifically, this case involves the following provision:

Once leave has be[en] approved and the employer has a compelling need to cancel the previously approved leave, the

employer agrees not to subject the employee to a loss of funds expended in planning of the leave (i.e. hotel reservations, airline tickets, etc.). The employee will demonstrate the unavoida[bility] of the loss of funds.

*Ass'n of Civilian Technicians, Puerto Rico Army Ch.*, 2000 WL 1009450, 56 F.L.R.A. 493, 496 (2000). Both the Union and the agency agreed that this provision would require the Department of Defense to use appropriated funds to reimburse an employee for certain losses of funds, including (but not limited to) lost travel expenses, resulting from the agency's cancellation of previously approved leave.

In its statement to the FLRA the agency objected to the disputed provision on the grounds that the Comptroller General's decisions "consistently held that purely personal expenses, such as forfeited hotel room deposits, dependent's travel costs, and increased costs for alternate flight reservations, do not become a government obligation upon the cancellation of approved annual leave and may not be reimbursed." In one of those opinions, the Comptroller General noted that its "own research ... has not revealed any law or regulation under which we may authorize payment ... for the additional personal travel expense incurred." *Matter of: John W. Keys*, 1981 WL 22558, 60 Comp. Gen. 629 (1981). Thus the agency concluded that "language which would agree to payment of personal expenses as a blanket rule, when annual leave is cancelled [sic] would create a violation of the Antideficiency Act."

In response to the DOD, the Union noted that the Comptroller General's decisions were not dispositive because they "by their own terms, do not prohibit collective bargaining agreements." The Union accepted the "general principle that expenditures are not authorized unless a law or regulation affirmatively authorizes them."

However, it suggested that the collective bargaining provisions anticipate some expenditures, otherwise, the sweep of this principle "would bar all proposals costing money unless the expenditure affirmatively were authorized by law or regulation," a scenario not contemplated by Congress, it argued, given the specificity of the collective bargaining law.

The FLRA affirmed the agency's rejection of this provision as contrary to law and therefore nonnegotiable. 2000 WL 1009450, 56 F.L.R.A. 493 (2000). It first observed that "[t]he disbursement of appropriated funds must be authorized by statute. Thus, the use of appropriated funds to reimburse employees for travel expenses must be authorized by statute." *Id.* at 497 (citations and footnote omitted). Following this observation, it noted that "payment of employee travel expenses is governed by the provisions of the Travel Expenses Act." *Id.* Because the "Comptroller General administers and interprets the Travel Expense[s] Act," the Authority "look[ed] for guidance to decisions of the Comptroller General to determine whether the Agency has authority to reimburse employees in the circumstances presented here." *Id.* The FLRA found that the "Comptroller General has consistently held that purely personal expenses, such as forfeited hotel room deposits, dependents' travel costs, and increased costs for alternate flight reservations, may not be reimbursed upon the cancellation of approved annual leave." *Id.* (citing *Earl J. Barlow*, Comp. Gen. Decision B–241249 (1991)). Thus, the Authority concluded that "given the nature of the reimbursement at issue in this case, we agree with the Comptroller General that no authority exists for agencies to use appropriated funds to reimburse employees for purely personal expenses involved in the planning of leave." *Id.*

The Union filed a motion for reconsideration before the FLRA in which it argued that the Travel Expenses Act was inapplicable. It further argued that the expenditures that would be required by the disputed provision "are authorized by the collective bargaining law, [5 U.S.C. § 7101, *et seq.*], and therefore by the law that generally authorizes agency expenditures." The Union cited two FLRA decisions, *NTEU and Department of the Treasury, BATF,* 1987 WL 90443, 26 F.L.R.A. 497 (1987); and *NFFE and GSA,* 1986 WL 54556, 24 F.L.R.A. 430 (1986), which it argued stood for the proposition that the "collective bargaining law creates new agency obligations which general agency appropriations may be used to meet." In the order denying the motion for reconsideration, 2000 WL 1455234, 56 F.L.R.A. 807 (2000), the FLRA noted that the "Union contends that the Authority erroneously applied the Travel Expenses Act and Federal Travel Regulations" and that the Union believes that " 'general agency appropriations . . . may be used to meet obligations of collective bargaining agreements' when those agreements are 'reasonably related' to the purpose of the collective bargaining law." 56 F.L.R.A. at 807. The Authority dispensed with the Union's arguments as follows:

> The Union's first argument is that the Authority erroneously applied the Travel Expenses Act and its implementing Federal Travel Regulations in finding that the provision is contrary to law. By its own terms, however, the provision requires the Agency, among other things, to reimburse employees for hotel reservations and airline tickets. . . . The provision clearly requires the Agency to pay employees for lost travel expenses. Accordingly, in [the case below] *Puerto Rico National Guard,* we applied Comptroller General decisions which have interpreted the Federal Travel Regulations to hold that agencies

have "no authority" to reimburse employees for the kind of purely personal travel expenses that are set forth by the terms of the provision.

*Id.* at 808.

Finally, the FLRA addressed the Union's "further argu[ment] that 'the collective bargaining law' authorizes the Agency to negotiate over the provision" and concluded that "[b]ecause there is no duty to bargain over a provision that is contrary to law, we reject the Union's argument." *Id.* The Authority responded, in a footnote, to the decisions cited by the Union by observing that "[c]onsistent with those cases, it is well accepted that agencies are required to negotiate on matters pertaining to the conditions of employment of unit employees that are within the discretion of the agency under law and are not otherwise nonnegotiable. In contrast, however, the provision in this case has been demonstrated to be contrary to law." *Id.* n. 5 (citations omitted).

The Union sought review in this Court.

## II. Analysis

In reviewing the FLRA's interpretation of its own enabling statute, we are "mindful that we owe great deference to the expertise of the Authority as it 'exercises its special function of applying the general provisions of the Act to the complexities of federal labor relations.' " *NLRB Union, Local 6 v. FLRA,* 842 F.2d 483, 486 (D.C.Cir.1988) (quoting *BATF v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983)). Here, however, we are faced with the FLRA's interpretation of the Travel Expenses Act, a statute *not* committed to the Authority's administration. We review such purely legal questions *de novo. See Social Security Admin. v. FLRA,* 201 F.3d 465, 471 (D.C.Cir.2000) ("We do not defer to the FLRA's interpretation of . . . a general statute not commit-

ted to the Authority's administration."). The Authority's reliance on opinions of the Comptroller General does not change our analysis. As we have held, "we regard the assessment of the GAO [and thus, the Comptroller General] as an expert opinion, which we should prudently consider but to which we have no obligation to defer." *Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 201 & n. 1 (D.C.Cir.1984) (Scalia, J.) (concluding that "[s]ince the GAO has been thought to be 'an arm of the legislature,' there might be a constitutional impediment to such binding effect" (citation omitted)); *cf. Crandon v. United States,* 494 U.S. 152, 177, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) ("[T]he vast body of administrative interpretation that exists— innumerable advisory opinions not only of the Attorney General, the OLC, and the Office of Government Ethics, but also of the Comptroller General and the general counsels for various agencies—is not an administrative interpretation that is entitled to deference under *Chevron....*"). With that standard of review in mind, we turn to the Authority's decision.

■ The FLRA's decision was premised on the assumption that the Travel Expenses Act governs the disputed provision in the collective bargaining agreement. It does not. The disputed provision says that "[o]nce leave has be[en] approved and the employer has a compelling need to cancel the previously approved leave, the employer agrees not to subject the employee to a *loss of funds expended in the planning of the leave,*" and gives costs incurred from hotel reservations and airline tickets as examples. 56 F.L.R.A at 496 (emphasis added). That provision does not speak in terms of travel expenses, personal, official, or otherwise. As the Union notes, it requires the agency to "pay employees' out-of-pocket losses (whether or not travel-related) when the agency— acting for its convenience, and in its interest—exercises its management right under

5 U.S.C. § 7106(a)(2)(B) to cancel leave and assign work instead." In contrast, the Travel Expenses Act, and specifically 5 U.S.C. § 5702, the provision in question, only governs per diem and reimbursement when an employee is "traveling on official business." The Union proposal does not necessarily even involve canceled travel, and it certainly does not address official business.

The FLRA cannot cite a single provision within the Travel Expenses Act, much less § 5702, that *prohibits* the disputed provision, expressly or impliedly. The Act addresses different subject matter altogether. It authorizes official travel. It does not by its terms prohibit anything. The Authority is attempting to force a square peg into a round hole. No faithful reading of the Travel Expenses Act, which establishes "entitled" reimbursement or allowance "when traveling on official business," 5 U.S.C. § 5702(a)(1), is relevant to the disputed provision, which provides compensation for unavoidable expenses resulting from canceled leave. To force such a reading turns the Travel Expenses Act on its head.

■ This is not to say that the expenditure of appropriated funds in a manner not authorized by law is negotiable—it is not. In an attempt to salvage its decision, the Authority now argues that its decision was based on the general principle that expenditures are not authorized unless a law or regulation affirmatively authorizes them, and that there is no authorization for the expenditure required by the disputed provision. But the Authority's decision *was not* based on a lack of authorization for the expenditure. Rather, it is clear that the FLRA's decision reasoned that because the Travel Expenses Act did not authorize the expenditure, it was prohibited. The Authority offered no other reason. Specifically, it did not rely on the lack of authori-

zation elsewhere in governing law. Agency decisions must generally be affirmed on the grounds stated in them. *See, e.g., Fort Stewart Schools v. FLRA,* 495 U.S. 641, 651–52, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990) ("[I]t is elementary that if an agency's decision is to be sustained in the courts on any rationale under which the agency's factual or legal determinations are entitled to deference, it must be upheld on the rationale set forth by the agency itself."); *SEC v. Chenery Corp.,* 318 U.S. 80, 93–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Post-hoc rationalizations, developed for litigation are insufficient. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action. . . ."). If the Authority only based its decision on the Travel Expenses Act, then that is the only rationale we may consider.

In its original opinion below, under "Analysis and Conclusions," the FLRA begins its analysis as follows: "The disbursement of appropriated funds must be authorized by statute. *Thus, the use of appropriated funds to reimburse employees for travel expenses* must be authorized by statute." 56 F.L.R.A. at 497 (emphasis added). The FLRA clearly saw the provision as one involving travel expenses and treated it as squarely governed by the Travel Expenses Act. Because the Travel Expenses Act did not authorize these expenditures, it concluded (following the Comptroller General's opinions), that there was no authority for the disputed provision, and declared it nonnegotiable. That proves at most that the Travel Expenses Act cannot be the source of authority for the disputed provision, not that the provision is contrary to law. However, the Union does not rely on the Travel Expenses Act as a source of authority— quite to the contrary, it expressly argues that the Act is inapplicable, instead relying on the collective bargaining laws as authorizing resulting expenditures. The FLRA did not address this argument.

The argument that the collective bargaining laws themselves authorize the expenditure is one reason that the Comptroller General opinions relied on by the FLRA cannot resolve this case. Those opinions did not address a collective bargaining situation and did not consider what effect, if any, the collective bargaining laws would have in authorizing the disputed provision. *See* 56 F.L.R.A. at 497 (discussing Comptroller General opinions). Reliance on these opinions of the Comptroller General is flawed for yet another reason. To the extent that the these opinions stand for the proposition that " 'there is no authority' to reimburse [an] employee for additional personal travel expenses incurred when employee's official duties caused him to make alternative flight reservations," 56 F.L.R.A. at 497 (quoting *John W. Keys,* 1981 WL 22558, 60 Comp. Gen. 629) (1981), they must be read narrowly. This pronouncement would necessarily only apply to the agency before the Comptroller General at that time—the Department of the Interior (in the *Keys* matter), not the Department of Defense, as we have here. Moreover, any subsequent appropriations acts would, of course, render that opinion, expert though it may have been at the time, obsolete. Therefore the FLRA should have confronted the specific facts before it—a collective bargaining agreement provision, with the DOD, in the year 2000. It did not, either in its original order or the order denying reconsideration.

In its motion for reconsideration, the Union expressly argued that the expenditures required by the disputed provision "are *authorized by the collective bargaining law,* [5 U.S.C. § 7101, *et seq.*], and therefore by the law that generally autho-

rizes agency expenditures." (emphasis added). Yet again, however, the Authority failed to address this argument. Instead it relied on its position that the "provision clearly requires the Agency to pay employees for lost travel expenses," and noted that in the original decision it "applied Comptroller General decisions which *have interpreted the Federal Travel Regulations* to hold that agencies have 'no authority' to reimburse employees for the kind of purely personal travel expenses that are set forth by the terms of the provision." 56 F.L.R.A. at 808 (emphasis added). The FLRA was only "appl[ying]" a rule that under the Travel Expenses Act and corresponding regulations, there is no authority to reimburse personal travel expenses or expenses that arise from canceled leave, and that rule does not dispose of the Union's argument that the collective bargaining laws and laws that generally authorize agency expenditures provide an independent source of authority. Instead, the FLRA acknowledges the Union's "further argu[ment] that 'the collective bargaining law' authorizes the Agency to negotiate over the provision" only to respond that "[b]ecause there is no duty to bargain over a provision that is contrary to law, we reject the Union's argument." *Id.* The FLRA cannot now argue that its decision was based on the general proposition that expenditures must be authorized, because after reaching the conclusion that there is no duty to bargain over a provision that is contrary to law, the Authority clearly states in a footnote: "In light of this result, it is unnecessary for the Authority to address the Union's additional arguments." *Id.* at 808 n. 6. These unaddressed "additional arguments" included the Union's position that the collective bargaining laws themselves permitted the use of general agency appropriations to meet the obligations of bargaining. *See id.* at 807–08. Despite its protestations to the contrary, the Authority only considered whether the disputed provision was prohibited by the Travel Expenses Act. Because the FLRA's application of the Travel Expenses Act was erroneous we must grant the petition for review.

### III. Conclusion

On remand, the Authority should consider whether the expenditures required by the disputed provision are "authorized by the collective bargaining law," 5 U.S.C. § 7101, *et seq.,* or are specifically authorized as an "appropriate arrangement[ ] for employees adversely affected by the exercise of [agency management] authority" in canceling leave and "assign[ing] work," 5 U.S.C. §§ 7106(a)(2)(B), (b)(3), as argued by the Union. That question is not properly before this Court because the FLRA based its decision solely on a misinterpretation of the Travel Expenses Act, and we decline to address it. Similarly, whether the Union failed to, or even needed to cite a general agency appropriations bill in the FLRA proceedings is also not before us. The only issue confronting this Court is the validity of the FLRA's decision—that the Travel Expenses Act prohibits the disputed provision. Because it does not, we grant the petition for review, vacate the decision and order below, and remand for proceedings consistent with this opinion.