Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 16, 2004        Decided June 15, 2004

No. 03-1321

ASSOCIATION OF CIVILIAN TECHNICIANS,
PUERTO RICO ARMY CHAPTER,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order of the
Federal Labor Relations Authority

———

*Daniel M. Schember* argued the cause and filed the briefs
for petitioner.

*James F. Blandford*, Attorney, Federal Labor Relations
Authority, argued the cause for respondent. With him on the
brief were *David M. Smith*, Solicitor, and *William R. Tobey*,
Deputy Solicitor. *David M. Shewchuk*, Attorney, entered an
appearance.

———

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

Before: HENDERSON, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This case is before the court for a second time. *See Ass'n of Civilian Technicians, Puerto Rico Army Chapter v. FLRA*, 269 F.3d 1112 (D.C. Cir. 2001) ("*ACT I*"). After the Department of Defense ("the Agency") had disapproved Provision 2 of a collective bargaining agreement as contrary to law under the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101 *et seq.*, (hereafter, "collective bargaining law"), the Association of Civilian Technicians, Puerto Rico Army Chapter ("the Union"), filed a negotiability appeal with the Federal Labor Relations Authority ("FLRA") pursuant to 5 U.S.C. § 7105(a)(2)(E). FLRA agreed with the Agency that Provision 2 was contrary to law and therefore nonnegotiable under 5 U.S.C. § 7117(a)(1), concluding that Provision 2 expenditures were not authorized by the Travel Expenses Act, 5 U.S.C. §§ 5701, *et seq. See Ass'n of Civilian Technicians, Puerto Rico Army Chapter*, 56 F.L.R.A. 807 (2000). The court reversed, holding that the Travel Expenses Act was irrelevant, *see ACT I*, 269 F.3d at 1116, and remanded the case for FLRA to address two issues presented by the Union, namely that Provision 2 expenditures are authorized (1) generally by the collective bargaining law, "and therefore by the law that generally authorizes agency expenditures," *id.* at 1115, 1117–18; or (2) specifically as an "appropriate arrangement[ ]" under 5 U.S.C. § 7106(b)(3) for employees injured as a result of the Agency's exercise of the management right to cancel leave and "assign work" under 5 U.S.C. § 7106(a)(2)(B). *Id.* at 1118. On remand, in again ruling that Provision 2 was contrary to law, FLRA addressed the first issue but not the second.

## I.

Congress has declared in the collective bargaining law that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). The collective bargaining law therefore protects the rights of

federal employees to form or join or refrain from joining any labor organization, *id.* § 7102, and imposes on federal agencies and labor organizations a duty to bargain collectively in good faith. *Id.* § 7116(a)(5), (b)(5). It also excludes certain management rights of an agency from inclusion in negotiations, *see id.* § 7106(a), but requires an agency to bargain over the procedures by which these management rights are exercised, *id.* § 7106(b), including negotiating "appropriate arrangements for employees adversely affected by the exercise of any [management] authority." *Id.* § 7106(b)(3). It generally requires that federal agencies and labor organizations bargain in good faith over the terms and conditions of employment, unless a bargaining proposal is inconsistent with an existing federal law, rule, or regulation. *See id.* §§ 7103(a), 7114, 7116, 7117(a). Thus, if a collective bargaining provision is inconsistent with federal law, *see id.* § 7117(a)(1), or excessively interferes with management's rights, *see id.* § 7106, the provision is nonnegotiable.

Under Provision 2 of the proposed collective bargaining agreement, the Union seeks reimbursement for its members' out-of-pocket losses resulting from the Agency's cancellation of previously approved leave. The provision provides:

> Once leave has be[en] approved and the employer has a compelling need to cancel the previously approved leave, the employer agrees not to subject the employee to a loss of funds expended in planning of the leave (i.e. hotel reservations, airline tickets, etc.). The employee will demonstrate the unavoida[bility] of the loss of funds.

*ACT I*, 269 F.3d at 1113–14. Because Provision 2 requires the disbursement of appropriated funds, the question before FLRA was whether such disbursement is authorized by law. *See* U.S. Const. Art. I., § 9, cl. 7; 31 U.S.C. § 1301(a). While acknowledging that the collective bargaining law does not "by itself" authorize the Agency to spend money, the Union again argued before FLRA on remand that "where Congress generally has authorized an agency to expend appropriated funds for agency operations, the collective bargaining law author-

izes expenditures to implement contract provisions that are not otherwise contrary to law." Petitioner's Supplemental Statement on Remand at 1 & n.1, *Ass'n of Civilian Technicians, Puerto Rico Army Chapter*, 2003 WL 190510, 58 F.L.R.A. 318 (2003); *see also ACT I*, 269 F.3d at 1115. In other words, "[t]he collective bargaining law creates new agency obligations which general agency appropriations may be used to meet." Petitioner's Supplemental Statement on Remand at 1; *see also ACT I*, 269 F.3d at 1115. The Union also renewed its position that Provision 2 is alternatively authorized as an "appropriate arrangement[ ]" under 5 U.S.C. § 7106(b)(3), arguing that "Agency payment of employees' unavoidable out-of-pocket losses incurred in reliance on the [A]gency's grant of leave, subsequently revoked, is a narrowly-tailored remedy for harm inflicted . . . by an [A]gency's exercise of its right to . . . [cancel leave and assign work]." Petitioner's Supplemental Statement on Remand at 3.

On the first remanded issue, FLRA concluded that neither the text of the collective bargaining law, *see* 5 U.S.C. § 7101(a), nor its legislative history provides express or implied authorization for the Agency's expenditure of appropriated funds for Provision 2 reimbursements. In finding no express authority, it relied on *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 104 (1983) ("*BATF*"), in which the Supreme Court stated that "there is no reference in the statute or the legislative history to travel expenses and per diem allowances." In finding that the collective bargaining law also does not provide implicit authorization for such reimbursements, FLRA relied on this court's statement in *ACT I* that Provision 2 reimbursements do not concern employees "traveling on official business," 269 F.3d at 1116, and concluded that, unlike the disputed provisions in *National Treasury Employees Union and Bureau of Alcohol, Tobacco & Firearms*, 26 F.L.R.A. 497, 498 (1987) ("*NTEU*"), and *National Federation of Federal Employees and General Services Administration*, 24 F.L.R.A. 430, 432–33 (1986) ("*GSA*"), Provision 2 does not involve "official business." FLRA thus rejected the Union's argument that under *NTEU*

and *GSA*, the Agency has discretion to use funds appropriated for general operations for Provision 2 reimbursements.

Then, instead of turning to the second remanded issue, whether Provision 2 is authorized under 5 U.S.C. § 7106(b)(3) as an "appropriate arrangement[ ]," FLRA examined whether there was other statutory authorization for Provision 2 reimbursements by looking to the Department of Defense Appropriations Act for Fiscal Year 2000, Pub. L. No. 106–79, 113 Stat. 1212, 1216–17 (1999) ("2000 Appropriations Act"). *Cf. ACT I*, 269 F.3d at 1116–17. FLRA concluded that the 2000 Appropriations Act does not expressly authorize Provision 2 reimbursements. Further, assuming the applicability of the "necessary expense doctrine," which requires that an expenditure be reasonably necessary or reasonably related to or make a direct contribution to carrying out an authorized function, *see* United States General Accounting Office, Office of the General Counsel, 1 *Principles of Federal Appropriations Law* 4–14 to 4–22 (2d ed. 1991) ("*Principles*"); 71 Comp. Gen. 527, 528 (1992); 63 Comp. Gen. 422, 427–28 (1984); 42 Comp. Gen. 226, 226 (1962), FLRA concluded that the appropriation for "Operation and Maintenance" for the Army National Guard in the 2000 Appropriations Act does not implicitly authorize Provision 2 reimbursements, because the Union had failed to show that such reimbursements would make "any contribution to the Agency's authorized purpose. . . ." Alternatively, FLRA concluded that Provision 2 reimbursements are prohibited by 5 U.S.C. § 5536, which bars payment to a federal employee of "additional pay or allowance" beyond that fixed by law for the service or duty.

## II.

On appeal, the Union's overarching contention is that FLRA failed to consider Congress's general authorization of appropriations for the Agency in the context of the collective bargaining law. According to the Union, because Congress requires the Agency to conduct its operations in accordance with the collective bargaining law, reasonably necessary expenses, which are authorized by general appropriations such

as in the 2000 Appropriations Act, include expenditures to carry out negotiated contract terms that are negotiable under the collective bargaining law. FLRA responds that neither the collective bargaining law nor the 2000 Appropriations Act authorizes the expenditure of funds to reimburse civilian employees for travel and recreational expenses forfeited when the Agency cancels previously approved leave, and regardless, such expenditures are prohibited by 5 U.S.C. § 5536.

A few preliminary observations guide our analysis. The Union has not argued that express authorization exists for Provision 2 reimbursements under federal law. Rather, it contends that implicit authorization for Provision 2 reimbursements may be found either pursuant to the collective bargaining law in conjunction with the 2000 Appropriations Act or pursuant to the 2000 Appropriations Act. As the collective bargaining law is FLRA's own enabling statute and the court would owe "considerable deference" to FLRA's interpretation of it, *see BATF*, 464 U.S. at 97, the court in *ACT I* remanded the case for FLRA to determine whether implicit authorization for Provision 2 reimbursements could be found either (1) through the "official business" test recognized by the Supreme Court in *BATF*, 464 U.S. at 107 n.17, and by FLRA in *NTEU*, 26 F.L.R.A. at 498 and *GSA*, 24 F.L.R.A. at 432–33, because Provision 2 reimbursements are sufficiently within the interest of the Agency to constitute "official business" and as such, such reimbursements are implicitly authorized under the 2000 Appropriations Act; or (2) through 5 U.S.C. § 7106(b)(3), because Provision 2 is an "appropriate arrangement[ ] for employees adversely affected by the exercise of . . . [management's] authority" to cancel leave and "assign work" and as such, the reimbursements are implicitly authorized under the 2000 Appropriations Act. *See ACT I*, 269 F.3d at 1118. Another approach for finding implicit authorization of Provision 2 reimbursements not addressed in the court's remand, but which FLRA addressed on remand, and as to which the court would owe no deference to FLRA's interpretation, *see Ass'n of Civilian Technicians, Tony Kempenich Memorial Chapter 21 v. FLRA*, 269 F.3d 1119, 1121 (D.C. Cir. 2001) ("*Tony Kempenich*"), would be

based on the "necessary expense doctrine" through which Provision 2 reimbursements might be found to be authorized under the 2000 Appropriations Act.

We first examine FLRA's interpretation of the collective bargaining law, then turn to its interpretation of the 2000 Appropriations Act, and finally address its alternative ruling on 5 U.S.C. § 5536.

**A.**

In rejecting the Union's reliance on *NTEU* and *GSA* for the proposition that the collective bargaining law, in conjunction with general appropriations laws, implicitly authorizes Provision 2 reimbursements, FLRA took the position that Provision 2 "does not involve the Agency's exercise of discretion in determining whether these expenses concern 'official business.'" Although the court generally owes deference to FLRA's interpretation of the collective bargaining law, *see BATF*, 464 U.S. at 97 & n.7; *Patent Office Prof'l Ass'n v. FLRA*, 47 F.3d 1217, 1220 (D.C. Cir. 1995); 5 U.S.C. §§ 706(2)(A), 7123(c), FLRA must "provide a rational explanation for its decision." *FDIC v. FLRA*, 977 F.2d 1493, 1496 (D.C. Cir. 1992); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In addressing the first remanded issue, FLRA has not done so.

Precisely what activity constitutes "official business" is a context-specific determination that requires an evaluation of factors that Congress has determined FLRA is well suited to do. *See BATF*, 464 U.S. at 97. It is clear that the term has some elasticity. The Supreme Court acknowledged in *BATF* that its conclusion that "federal agencies may not be required under [the 'official time' provision in 5 U.S.C.] § 7131(a) to pay the travel expenses and per diem allowances of union negotiators does not, of course, preclude an agency from making such payments upon a determination that they serve the convenience of the agency or are otherwise in the primary interest of the Government. . . ." 464 U.S. at 107 n.17. FLRA itself has construed the term "official business" pragmatically, concluding that the appropriate inquiry is whether

the provision is "sufficiently within the interest of the United States so as to constitute official business." *See NTEU*, 26 F.L.R.A. at 498; *GSA*, 24 F.L.R.A. at 432–33. Yet on remand FLRA relied on the court's statement in *ACT I* that Provision 2 "does not necessarily even involve canceled travel, and it certainly does not address official business." 269 F.3d at 1116. When read in context, it is clear that the court was referring to the fact that Provision 2 does not relate to official travel, i.e., "travel expenses, personal, official, or otherwise," to which the Travel Expenses Act would apply. That is a different question than whether Provision 2 reimbursements would be authorized under the "official business" standard.

At no point on remand did FLRA evaluate whether Provision 2 might or might not constitute "official business" within the meaning of the *BATF* footnote and its own precedent. It did not address the Union's argument that the collective bargaining law, *see* 5 U.S.C. §§ 7106(b)(3), 7114, being itself sufficiently within the interest of the United States, *see id.* § 7101, creates "official business" that would not be "official business" in the absence of the law. Neither did it address the implications of its previous rulings in *NTEU* and *GSA* that the Agency could exercise its discretion to use appropriated funds for union-use of government telephones for labor-management relations. *See NTEU*, 26 F.L.R.A. at 498; *GSA*, 24 F.L.R.A. at 433. Nor did it address whether for reasons of adequate staffing, retention, recruitment, or morale, for example, such reimbursements might advance the Agency's interests or convenience.

In addition, FLRA failed to address at all the second remanded issue in *ACT I*, namely whether Provision 2 reimbursements would be authorized as an "appropriate arrangement[ ]" under 5 U.S.C. § 7106(b)(3) and therefore implicitly authorized under the 2000 Appropriations Act. If Provision 2 reimbursements are not authorized by law, Provision 2 will be deemed inconsistent with federal law under 5 U.S.C. § 7117(a)(1), which bars negotiation on matters "inconsistent with any Federal law or any Government-wide rule or regulation." Provision 2, however, may constitute an "appropriate arrangement[ ]" if it is intended to be an arrangement for

employees adversely affected by management's exercise of its rights, and does not "excessively interfere[ ]" with the exercise of management rights under 5 U.S.C. § 7106(a). *Nat'l Ass'n of Gov't Employees*, 21 F.L.R.A. 24, 29–33 (1986); *see also U.S. Dep't of Treasury, Office of the Chief Counsel, IRS v. FLRA*, 960 F.2d 1068, 1072–73 (D.C. Cir. 1992); *Am. Fed'n of Gov't Employees, ALF–CIO, Local 2782 v. FLRA*, 702 F.2d 1183, 1185–88 (D.C. Cir. 1983). To make that determination FLRA would need to address (1) whether employees have been adversely affected, (2) by a management decision, and if so, (3) whether reimbursement of resulting monetary losses are likely to interfere excessively with management rights. To the extent that (1) and (2) are undisputed, inasmuch as Union members will, absent reimbursement, incur out-of-pocket losses as a result of management's recall decision pursuant to its right under 5 U.S.C. § 7106(a)(2)(B) to cancel leave and to "assign work," the conclusion as to (3) may turn on a variety of considerations, including, for example, whether or not there is a cap on the amount of individual expenditures or a limited period of time for covered expenditures so as not to chill "excessively" management's exercise of its rights in response to the needs of the Guard. But if Provision 2's out-of-pocket losses are directly caused by the Agency's exercise of its management rights, it is possible to view that reimbursement as not for purely personal expenses, but rather for an "appropriate arrangement[ ]" to compensate civilian technicians harmed by the exercise of management rights. The "appropriate arrangement[ ]" determination, moreover, will inform FLRA's analysis of whether Provision 2 reimbursements are for or related to "official business" if they advance the Agency's interests or convenience.

**B.**

Had FLRA addressed the second remanded issue, there might have been no occasion for it to interpret the 2000 Appropriations Act. The one member of FLRA who addressed the issue concluded that Provision 2 was not an "appropriate arrangement[ ]," and were such a conclusion adequately explained, that, absent express congressional au-

thorization for such reimbursements, would presumably be the end of the matter. In any event, upon *de novo* review, for the court owes no deference to FLRA's interpretation of the appropriations act, *see Tony Kempenich*, 269 F.3d at 1121, the court is unable to determine on the basis of the present administrative record whether Provision 2 reimbursements are implicitly authorized under the 2000 Appropriations Act.

FLRA acknowledged on remand that 31 U.S.C. § 1301(a), which provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made....," does not require that every authorized expenditure be expressly authorized in an appropriations act. *See Ass'n of Civilian Technicians, Puerto Rico Army Chapter*, 2003 WL 190510, at *9, 58 F.L.R.A. 318 (2003) (citing 1 *Principles*, *supra*, at 4–15). Under the "necessary expense doctrine," the Comptroller General has opined that expenditures not explicitly authorized in an appropriations act may nonetheless be lawful. *See* 6 Comp. Gen. 619, 621 (1927); 1 *Principles*, *supra*, at 4–15 to 4–16. In rejecting the Union's reliance on the 2000 Appropriations Act as implicitly authorizing the use of appropriated funds to carry out negotiated agreements, FLRA concluded that "reimbursement of such personal expenses . . . is neither reasonably necessary nor relevant to maintaining the Agency's operations that necessitated the cancellation of leave." *Ass'n of Civilian Technicians, Puerto Rico Army Chapter*, 2003 WL 190510, at *9. It is not, however, self-evident under the "necessary expense doctrine," which FLRA assumed applied without deciding, that use of the Agency's appropriations for Provision 2 reimbursements would be unlawful. Whether for reasons of adequate staffing, retention, recruitment, or morale, for example, Provision 2 reimbursements could make a "contribution" to carrying out an authorized function, such as "assign[ing] work." *See* 5 U.S.C. § 7106(a)(2)(B). Deciding that question would require additional information both about the Agency's function with regard to the Guard and about the expenditures authorized in the 2000 Appropriations Act for Agency operations and maintenance. FLRA noted on remand that neither party had addressed the applicability of the 2000 Appropriations Act,

nor whether the Agency uses funds appropriated for the Guard's operations and maintenance for operations related to civilian Guard technicians. *See Ass'n of Civilian Technicians, Puerto Rico Army Chapter*, 2003 WL 190510, at *8 n.5.

To the extent that FLRA looked to 10 U.S.C. § 1053a as support for its conclusion that Provision 2 reimbursements are not implicitly authorized by the 2000 Appropriations Act, its reliance was misplaced. Under 10 U.S.C. § 1053a(a), military personnel may receive reimbursement for "travel and related expenses . . . incurred by the member as a result of the cancellation of previously approved leave when the leave is canceled in connection with the member's participation in a contingency operation and the cancellation occurs within 48 hours of the time the leave would have commenced." FLRA ignored, however, that military personnel do not enjoy the collective bargaining rights accorded to civilian employees under the collective bargaining law for the terms and conditions of their employment. *Compare* 5 U.S.C. §§ 7102, 7114 *with* 10 U.S.C. § 976; *see Ass'n of Civilian Technicians, Wichita Air Capitol Chapter v. FLRA*, 360 F.3d 195, 196 (D.C. Cir. 2004). Congress, consequently, must enact specific laws to provide military personnel any employment rights or benefits, including reimbursement for such out-of-pocket losses. *See* 10 U.S.C. § 976(c)(2). FLRA thus failed to consider adequately the Union's argument that, by parity of reasoning, Provision 2 reimbursements are statutorily authorized because the collective bargaining law lends a similar congressional imprimatur to conditions of employment resulting from collective bargaining agreements.

## C.

FLRA's alternate holding that Provision 2 reimbursements are barred by 5 U.S.C. § 5536 is likewise flawed. Section § 5536 prohibits the receipt by federal employees with statutorily fixed salaries of "additional pay or allowance . . . for any other service or duty" without specific authorization. The plain text of § 5536 limits its reach to payment for "other

service or duty" falling within a federal employee's duties for which compensation is fixed by Congress. The Supreme Court explained in *Stansbury v. United States*, 75 U.S. 33, 37 (1868), of § 5536's predecessor, 5 U.S.C. § 70 (1842), that "[t]he law was passed to remedy an evil which had existed, of detailing officers with fixed pay to perform duties outside of their regular employment, and paying them for it, when the government was entitled, without this double pay, to all their services." *See also Mullett v. United States*, 150 U.S. 566, 569–70 (1893); *United States v. Johnson*, 173 U.S. 363, 372–81 (1899); *Lewis v. United States*, 244 U.S. 134, 145–46 (1917).

Congress's concern with "additional pay or allowance" is not implicated by negotiation of a "condition of employment" under the collective bargaining law, *see* 5 U.S.C. § 7114, to reimburse civilian employees for out-of-pocket losses incurred as a result of the Agency's exercise of a management right. *See id.* § 7106(a)-(b). Upon recall, Union members will receive their regular fixed compensation for service to the Guard; the question is not whether they will receive additional pay for "other service or duty," but whether they must absorb unavoidable monetary losses caused by the Agency's recall. There was no suggestion in *Stansbury* that reimbursement of expenses incurred as a result of employment is prohibited by § 5536; indeed, the actual expenses had been paid in that case. 75 U.S. at 34–35, 36. Counsel for FLRA conceded at oral argument that the Agency has discretion to negotiate reimbursements for personal expenses such as uniform allowances, certain health benefits, and personal travel expenses associated with transporting the employee to the work site upon recalling the employee's leave. FLRA's view that Agency reimbursement of such personal expenses is not "additional pay or allowance" prohibited under § 5536 weakens its reliance on § 5536 in concluding that Provision 2 reimbursements are barred and, therefore, nonnegotiable under the collective bargaining law.

Because FLRA's decision on remand failed to provide an adequate explanation of its decision on the first remanded issue and failed altogether to address the second remanded

issue, we grant the petition and remand the case to FLRA. This time on remand FLRA shall, if it adheres to its conclusion on the first remanded issue in *ACT I*, provide an explanation in accordance with the guidance provided by this opinion and in light of any further arguments of the Union or the Agency on remand. In addition, in order to avoid another remand in the event the Union petitions for review of FLRA's adherence to its original position on the first remanded issue, FLRA shall also determine whether Provision 2 is an "appropriate arrangement[ ]" under 5 U.S.C. § 7106(b)(3).