# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 6, 2008          Decided August 5, 2008

No. 07-1422

ASSOCIATION OF CIVILIAN TECHNICIANS, PUERTO RICO ARMY
CHAPTER,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order
of the Federal Labor Relations Authority

———

*Daniel M. Schember* argued the cause and filed the briefs
for petitioner.

*James F. Blandford*, Attorney, Federal Labor Relations
Authority, argued the cause for respondent. With him on the
brief was *William R. Tobey*, Deputy Solicitor.

Before: TATEL, GARLAND, and GRIFFITH, *Circuit Judges*.

GARLAND, *Circuit Judge*: The Association of Civilian
Technicians, Puerto Rico Army Chapter (ACT), petitions for
review of a ruling by the Federal Labor Relations Authority
(FLRA) concerning a contract provision that requires

reimbursing employees for certain personal expenses. The Department of Defense (DOD) deemed the provision contrary to law and thus not negotiable under the federal collective bargaining statute, 5 U.S.C. §§ 7101 *et seq.* FLRA agreed, holding that the provision is contrary to law because it would require the agency to spend appropriated funds without congressional authorization.

On its third visit to this court, ACT contends that the collective bargaining statute itself provides the requisite authorization, and that the disputed reimbursement provision is an "appropriate arrangement[]" under § 7106(b)(3) of the statute. In the proceedings below, FLRA disagreed, finding that the provision is not an appropriate arrangement within the meaning of § 7106(b)(3). Because we defer to that reasonable determination, we deny ACT's petition without addressing the broader question of whether the collective bargaining statute implicitly authorizes expenditures to implement contract provisions that are negotiable under the statute.

I

ACT and the Puerto Rico National Guard negotiated a contract provision requiring the Guard to reimburse employees for lost personal travel and recreational expenses whenever the agency cancels previously approved leave. The provision states:

> Once leave has be[en] approved and the employer has a compelling need to cancel the previously approved leave, the employer agrees not to subject the employee to a loss of funds expended in the planning of the leave (*i.e.*, hotel reservations, airline tickets, etc.). The employee will demonstrate the unavoida[bility] of the loss of funds.

*Association of Civilian Technicians, Puerto Rico Army Chapter*, 60 F.L.R.A. (No. 180) 1000, 1000 (May 31, 2005) ("*Order*") (alteration in original).

Under the Federal Services Labor-Management Relations Act, 5 U.S.C. §§ 7101 *et seq*. (hereinafter, the "collective bargaining statute"), the head of an agency must approve a collective bargaining agreement between the agency and a union "if the agreement is in accordance with the provisions of this chapter and any other applicable law." 5 U.S.C. § 7114(c)(2). The Secretary of Defense disapproved the provision at issue here as contrary to federal appropriations law and hence outside the Defense Department's obligation to bargain. ACT appealed to FLRA, which upheld the Department's decision. The Authority found that expenditures for employee travel are unlawful unless authorized by the Travel Expenses Act, 5 U.S.C. §§ 5701 *et seq*., and concluded that because the expenditures required by the disputed provision are for "purely personal expenses," the Travel Expenses Act does not authorize them. *Association of Civilian Technicians, Puerto Rico Army Chapter*, 56 F.L.R.A. (No. 77) 493, 497 (2000).

ACT then filed the first of three petitions for review in this court. On review of the first petition, we vacated FLRA's decision, holding that the Travel Expenses Act is irrelevant to the reimbursement provision because the Act merely "authorizes official travel" and "does not by its terms prohibit anything." *Association of Civilian Technicians, Puerto Rico Army Chapter v. FLRA*, 269 F.3d 1112, 1116 (D.C. Cir. 2001) (*ACT I*). We remanded the case for FLRA to consider ACT's contentions that the expenditures required by the disputed provision are authorized by the collective bargaining statute generally or by the specific section of the statute that permits negotiation of "appropriate arrangements for employees adversely affected by

the exercise of [agency management] authority."  5 U.S.C. § 7106(b)(3); *see ACT I*, 269 F.3d at 1118.

On remand, FLRA again held that the reimbursement provision is contrary to law because it requires the unauthorized expenditure of appropriated funds.  Without addressing the specific question of whether the reimbursement provision is an "appropriate arrangement[]" under the collective bargaining statute, FLRA held that the statute does not explicitly or implicitly authorize the expenditure of appropriated funds for the reimbursements called for by the disputed provision.  The Authority also rejected the union's argument that DOD's appropriation for general operating expenses gives it discretion to make expenditures to implement the reimbursement provision.  *See Association of Civilian Technicians, Puerto Rico Army Chapter*, 58 F.L.R.A. 318, 321-24 (2003).

ACT then filed its second petition for review, and we again vacated and remanded.  *See Association of Civilian Technicians, Puerto Rico Army Chapter v. FLRA*, 370 F.3d 1214, 1223 (D.C. Cir. 2004) (*ACT II*).  We held, inter alia, that FLRA had failed to explain adequately its conclusion that the collective bargaining statute, in conjunction with DOD's general appropriations statute, does not implicitly authorize expenditures under the reimbursement provision as "'official business'" of the Department.  *Id.* at 1219-20 (quoting *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 107 (1983) (*BATF*)).  We also noted that FLRA had failed to address at all whether reimbursements under the provision "would be authorized as an 'appropriate arrangement[]' under 5 U.S.C. § 7106(b)(3) and therefore implicitly authorized under [DOD's] Appropriations Act."  *Id.*[1]  But we made it clear that, if FLRA

---

[1]We further found that FLRA had failed to explain adequately its rejection of ACT's contention that "the reimbursements are implicitly

"adequately explained" a conclusion "that [the provision] was not an 'appropriate arrangement[],'" that "would presumably be the end of the matter" -- "absent express congressional authorization for such reimbursements," which ACT does not assert exists here. *Id.* at 1221.

On remand, FLRA dismissed ACT's appeal for a third time. In the decision now under review, it held that expenditures under the reimbursement provision do not constitute "official business." *See Order*, 60 F.L.R.A. at 1004-07. FLRA also held that the provision is not an "appropriate arrangement[]" under § 7106(b)(3), because it would "excessively interfere[]" with the right of agency management to assign work. *See id.* at 1007-08. FLRA subsequently denied ACT's motion for reconsideration, *Association of Civilian Technicians, Puerto Rico Army Chapter*, 62 F.L.R.A. (No. 38) 144 (2007), and this petition for review followed.

II

We review FLRA decisions under the Administrative Procedure Act, which requires the court to "set aside agency actions and conclusions found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *BATF*, 464 U.S. at 97 n.7 (quoting 5 U.S.C. § 706). Because "FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals" of the collective bargaining statute, the Authority is entitled to "considerable deference when it exercises its special function of applying the general provisions

---

authorized under [DOD's] Appropriations Act" pursuant to the "necessary expense doctrine" identified in opinions of the Comptroller General. *ACT II*, 370 F.3d at 1221 (citing 6 Comp. Gen. 619, 621 (1927)).

of the Act to the complexities of federal labor relations." *Id.* at 97 (internal quotation marks omitted). "As the collective bargaining law is FLRA's own enabling statute," we also "owe 'considerable deference' to FLRA's interpretation" of that statute. *ACT II*, 370 F.3d at 1219 (quoting *BATF*, 464 U.S. at 97).

Although this case has a complicated history, the parties' pleadings have greatly simplified the issues now before us. ACT agrees that a collective bargaining proposal is contrary to law, and hence not subject to bargaining, if it requires expenditure of appropriated funds for a purpose not authorized by law. *See, e.g.*, *ACT I*, 269 F.3d at 1116; *see generally* ACT Reply Br. 4-8. It maintains, however, that: (1) the collective bargaining statute implicitly authorizes expenditures to implement contract provisions that are negotiable under the statute; and (2) the disputed reimbursement provision is negotiable under the statute because it is an "appropriate arrangement" under § 7106(b)(3). FLRA disputes each proposition. Both parties agree, however, that if the reimbursement provision is not an appropriate arrangement under the statute, then we may affirm FLRA's decision without further analysis. Oral Arg. Recording at 1:30 (ACT); *id.* at 14:00 (FLRA). ACT does not contend that any law other than the collective bargaining statute authorizes the expenditures required by the provision, and does not contend that any section of the statute other than the "appropriate arrangement" section applies. Accordingly, we turn to the question of whether the reimbursement provision is an appropriate arrangement under § 7106(b)(3).

In general, the collective bargaining statute imposes upon federal agencies and labor organizations a duty to bargain in good faith with respect to conditions of employment, subject to certain exceptions. *See generally* 5 U.S.C. §§ 7102,

7103(a)(12), 7114(a)(4), 7117(a); *ACT II*, 370 F.3d at 1217. One such exception is set forth in § 7106(a), which excludes enumerated "management rights" from the realm of negotiation. *See Patent Office Prof'l Ass'n v. FLRA*, 47 F.3d 1217, 1220 (D.C. Cir. 1995). As is relevant here, § 7106(a) provides that, "[s]ubject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency" to "assign . . . employees" and to "assign work." 5 U.S.C. § 7106(a)(2). Subsection 7106(b) then "lists certain kinds of proposals that would affect these managerial rights, yet remain proper subjects of collective bargaining." *American Fed'n of Gov't Employees* [*AFGE*]*, AFL-CIO, Local 1923 v. FLRA*, 819 F.2d 306, 308 (D.C. Cir. 1987). In particular, § 7106(b)(3) states that "[n]othing in this section shall preclude any agency and any labor organization from negotiating . . . *appropriate arrangements* for employees adversely affected by the exercise of any authority under this section by such management officials." 5 U.S.C. § 7106(b)(3) (emphasis added). Hence, "a proposal advancing . . . an appropriate arrangement for adversely affected employees falls within the scope of an agency's duty to bargain, notwithstanding that implementation of the proposal would affect the enumerated managerial rights." *AFGE Local 1923*, 819 F.3d at 308.

To determine whether a proposal is an "appropriate arrangement" under § 7106(b)(3), FLRA asks whether the proposal "excessively interferes" with management rights. *National Ass'n of Gov't Employees, Local R14-87 and Kansas Army Nat'l Guard*, 21 F.L.R.A. (No. 4) 24, 31 (1986) (*KANG*). FLRA adopted that test upon this circuit's suggestion, *see id.* (citing *American Fed'n of Gov't Employees* [*AFGE*]*, AFL-CIO, Local 2782 v. FLRA*, 702 F.2d 1183, 1188 (D.C. Cir. 1983)), and we have repeatedly cited it with approval in reviewing FLRA decisions, *see ACT II*, 370 F.3d at 1221; *Patent Office Prof'l Ass'n*, 47 F.3d at 1221; *AFGE Local 1923*, 819 F.2d at 308-09.

Under the test, "[a]ssuming that the proposal, as a threshold matter, suggests an arrangement for adversely affected employees, the decisionmaker must ask whether implementation of the proposed arrangement would 'impinge upon management prerogatives to an excessive degree.'" *AFGE Local 1923*, 819 F.3d at 308 (quoting *AFGE Local 2782*, 702 F.2d at 1188). As FLRA does not dispute that the reimbursement provision "is intended to ameliorate the adverse effects of the exercise of a management right, i.e., the cancellation of leave," FLRA Br. 36, the only issue is whether the provision's interference with that right is excessive.

"The determination whether an interference with managerial prerogatives is excessive depends primarily on the extent to which the interference hampers the ability of an agency to perform its core functions -- to get its work done in an efficient and effective way." *AFGE Local 1923*, 819 F.3d at 308-309. That inquiry involves "weighing the competing practical needs of employees and managers." *KANG*, 21 F.L.R.A. at 31-32. We "afford considerable deference to the FLRA's balancing of management and employee interests under its 'excessive interference' test." *U.S. Dep't of Treasury, Office of Chief Counsel, I.R.S. v. FLRA*, 960 F.2d 1068, 1074 (D.C. Cir. 1992).

In this case, FLRA determined that the disputed reimbursement provision would excessively interfere with management's right "to assign work and assign employees." *Order*, 60 F.L.R.A. at 1007. The Authority noted that "the provision would require the Agency to reimburse employees not only for expenses necessary to return to work from cancelled leave, but also for unused theater, sports, and banquet tickets." *Id.* "The agency's liability under the provision," FLRA held, "is so uncontrollable, so unforeseeable, and so unrelated to the Agency's exercise of its right to assign work as to be excessive."

*Id.* In particular, "the absence of any limit or cap on the Agency's potential economic liability would interfere with or hinder the Agency's decisions to cancel leave of employees in mobilizing and deploying employees for military missions." *Id.*; *see ACT II*, 370 F.3d at 1221 (noting that whether a provision excessively interferes with management rights "may turn on a variety of considerations, including, for example, whether or not there is a cap on the amount of individual expenditures or a limited period of time for covered expenditures").

ACT argues that, with the reimbursement provision, "management might be *less* disinclined to cancel and assign work [because] it knows that it can hold harmless, at least financially, the employee that it wants to do the work." ACT Br. 25. We do not discount the possibility that management *might* react that way, but the sole question before us is whether the Authority's contrary analysis is unreasonable. And we see no basis upon which to reject as unreasonable FLRA's conclusion that an unlimited and uncontrollable financial obligation will dissuade the Guard from cancelling leave when necessary, thereby impeding the agency's ability to deploy its members and fulfill its mission. ACT effectively concedes as much, stating that "either view might be reasonable and sincerely held." *Id.*

Contrary to ACT's contention, *id.* at 26, FLRA did not hold that an expenditure cap is always required if a reimbursement provision is to constitute an "appropriate arrangement." Rather, it stated only that, in the specific context of the provision at issue in this case, the lack of a cap exacerbates the burden on agency decisionmaking. *See Order*, 60 F.L.R.A. at 1007; FLRA Br. 39 n.14. Nor did FLRA render a decision that applies to a broad swath of cases beyond the one before it. *See Order*, 60 F.L.R.A. at 1007; Oral Arg. Recording at 12:30. Rather, the Authority emphasized that its decision was based on the

relationship between the provision at issue and the particular agency mission with which it interferes. The "provision conflicts," the Authority held, "with the already noted mission of the Guard as 'a military organization dedicated to a military mission that provides trained personnel for 'mobilization in times of war, national emergency or civil disruption.'" *Order*, 60 F.L.R.A. at 1007-08 (quoting *Association of Civilian Technicians, Wichita Air Capitol Chapter*, 60 F.L.R.A. (No. 73) 342, 347 (2004)) (internal quotation marks omitted).

Finally, the Authority's decision is not a departure from its own precedent, as ACT suggested below and at oral argument. As FLRA explained, the principal decision that ACT relies upon for this contention "involved the use of nonappropriated funds that are not subject to the same statutory restrictions on the use of appropriated funds at issue here." *Order*, 60 F.L.R.A. at 1008 (distinguishing *National Ass'n of Gov't Employees, Local R4-26*, 40 F.L.R.A. (No. 15) 118, 119-23 (1991)). In addition, "the question of whether the proposal was an appropriate arrangement was not before" the Authority in that case. *Association of Civilian Technicians, Puerto Rico Army Chapter*, 62 F.L.R.A. (No. 38) 144, 146 (2007) (order denying motion for reconsideration). And "unlike the reimbursements in this case," FLRA noted, the other precedents cited by ACT concerning "uniform allowances, certain health benefits, and employee travel expenses, have been [expressly] authorized by Congress." *Order*, 60 F.L.R.A. at 1008 n.3 (citing statutory authorizations).

For the foregoing reasons, we conclude that FLRA's determination that the disputed contract provision is not an appropriate arrangement survives the deferential standard of review applicable to its decisions under the collective bargaining statute. *See BATF*, 464 U.S. at 97 & n.7; *ACT II*, 370 F.3d at 1219.

## III

In our previous opinion in this case, we stated that, if FLRA "adequately explained" a conclusion that the reimbursement provision was not an "appropriate arrangement" under 5 U.S.C. § 7106(b)(3), that "would presumably be the end of the matter." *ACT II*, 370 F.3d at 1221. FLRA has now provided an adequate explanation, and that does indeed end the matter. Accordingly, the petition for review is

*denied*.